STATE OF NORTH CAROLINA v. MARQUIS DeLAFAYETTE PITTS

No. 7121SC76

(Filed 3 February 1971)

1. Burglary and Unlawful Breakings § 5; Larceny § 7— breaking and entering and larceny — sufficiency of evidence

The State's evidence was sufficient for submission to the jury on issues as to defendant's guilt of the felonies of breaking and entering a furniture store and larceny of property therefrom.

2. Criminal Law § 164— review of nonsuit question — failure to renew motion at conclusion of evidence

The sufficiency of the State's evidence will be reviewed on appeal even though defendant failed to renew his motion for nonsuit at the conclusion of the evidence as required by G.S. 15-173. G.S. 15-173.1.

3. Criminal Law § 21; Indictment and Warrant § 1— necessity for preliminary hearing

A preliminary hearing is not an essential prerequisite to the finding of a bill of indictment, and a defendant who is tried on a bill of indictment is not entitled to a preliminary hearing as a matter of right.

4. Criminal Law § 21; Indictment and Warrant § 1— preliminary hearing 13 days after arrest — dismissal of indictment

The fact that defendant was given a preliminary hearing on a warrant 13 days after his arrest on the warrant is not grounds for dismissal of an indictment obtained against him more than a month thereafter.

5. Criminal Law § 167— presumption of regularity

There is a presumption in favor of the regularity of the proceedings in a trial court.

6. **Criminal Law § 21; Indictment and Warrant § 1— preliminary hearing — denial of right to present evidence**

The record does not support defendant's contention that he was denied the right to present evidence in his own behalf at his preliminary hearing.

7. **Arrest and Bail § 9; Indictment and Warrant § 14— dismissal of indictment — excessive bail**

Defendant's contention that bill of indictment returned against him should be dismissed because he had been held under excessive bond is without merit.

8. **Arrest and Bail § 9— amount of appearance bond**

Appearance bond of $5,000 for defendant charged with felonious breaking and entering and felonious larceny was not excessive.

9. **Arrest and Bail § 10— contention that bond increased by arresting officer**

Defendant's contention that the bond requirement set by the issuing magistrate was increased by the arresting officer is unsupported by the record.

10. **Constitutional Law § 31— notice of charges against defendant**

Defendant's contention that he was denied timely notice of the charges against him in the bill of indictment is not supported by the record.

APPEAL by defendant from *Armstrong, Superior Court Judge,* 10 August 1970 Criminal Session of Superior Court held in FORSYTH County.

Defendant was charged in a bill of indictment, proper in form and returned by the grand jury as a true bill at the 27 July 1970 Session of Superior Court of Forsyth County, with the three felonies of breaking and entering, larceny, and receiving stolen goods knowing them to have been stolen. He was tried on the first two counts of breaking and entering and larceny. The jury returned a verdict of "guilty as charged" on both counts. From an active prison sentence on the first count of breaking and entering and a suspended prison sentence on the second count of larceny, the indigent defendant appealed to the Court of Appeals.

*Attorney General Morgan, Trial Attorney Cole, and Staff Attorney Ricks for the State.*

*Curtiss Todd for defendant appellant.*

MALLARD, Chief Judge.

The evidence for the State tended to show that the driveway to the loading area of the store and warehouse of the Keith-Lowery Furniture Company, a corporation, at Eighth and Liberty Streets in Winston-Salem was fenced in on 9 June 1970. There was a gate at the entrance of this driveway.

A police officer testified that in response to a call, he went to the area about 4:00 a.m., parked his car with the lights shining into the driveway, and saw a person "poke his head out of the door and look towards me and then his head go back in." The officer thereupon used his radio to call for help. Two other officers arrived. They found the chain and the hasp which secured the gate to the driveway had been broken, and a truck was parked at the loading platform.

A demand was made by the officers for whomever was in the building to come out, whereupon defendant Pitts and a man by the name of James Crosby came out. There was nobody else in there. The defendant Pitts was searched there at the scene, and in his pocket the officer found one of the padlocks which had been used the night before on the chain to secure the gate to the driveway.

Entry into the main warehouse and store had been made through a window from the shipping room. This glass window had been covered with iron bars which had been pulled and bent in order to gain entry, and the window glass was broken. The shipping room was not a part of the main warehouse and store, and it was separated from the loading platform by sliding doors. The door to the shipping room from the main warehouse and store had a bar across it on the inside of the warehouse and store which had been removed and the door opened. The officers found in the shipping room five portable television sets, a stereo tape recorder, and an AM and FM radio combination sitting on top of one of the television sets, all of which had been removed from the main store or warehouse. When the business was closed the night before, these television sets, radio, and tape recorder were not in the shipping room.

The building was locked and secured the night before, the door from the main building to the shipping room was closed with a bar across it on the inside, the bars across the window were not bent, and the window was not broken. An ADT

burglar alarm system was activated by L. J. Keith, Secretary-Treasurer of the Keith-Lowery Furniture Company, when he closed and locked the building on the evening of 8 June 1970 at about 6:00 p.m. In the early morning hours of 9 June 1970, "the ADT people" notified Mr. Keith that the store had been entered and shortly thereafter he went to the store.

Defendant testified that on 8 June 1970, he, "Frankie, the co-defendant," and others went to South Carolina and returned about 12:30 or 1:00 a.m. (It appears that the defendant refers to James Crosby, the other person apprehended by the officers in the building, as "Frankie.") He and Frankie had been drinking and decided to go over on the eastside to a "drink house" although "we stay on the west side of town." They went to a bus station and Frankie left first. Defendant stayed at the bus station for about twenty-five or thirty minutes after Frankie left and then went to Liberty Street. He went "straight up Liberty." Defendant said:

"I was whistling, you know, and singing to myself. When I got up by Keith and Lowery I was whistling and singing, and when I started by, was just about past Keith-Lowery, somebody said, 'pst. Hey, Dee.' I looked back and didn't see anybody. When I started to turn, I heard it again. So when I stepped back I saw Frankie. He was standing back there on what they say was the loading dock of Keith-Lowery. And he motioned for me to come here. So I went on over to the gate, opened the gate, and when I started in my foot hit something—you know, I kicked it when I was walking—and I picked it up. It was a lock. It was the same lock in question here. I picked the lock up. I walked on back there to see what he wanted. When I walked back there he was standing back there, and it was some televisions and stuff sitting out there on that loading dock. I said, 'Man, what are you doing back here?' you know. When I went back there they were sitting back there, and I told him to come on out, told him to come on out because the place was burglarized. And just as we turned to walk out—I guess he was going to go with me; I was going to go about my business—as we turned to walk out. I guess that is when Sergeant Kelly pulled up because we could see the lights, you know, appear. And Frankie peeped out from around there and said it was the police. And I got kind of mad then.

I told him, I said, 'Now, here I am standing back here; I don't know what is going along, and I am going to jail with you.' And I sat down. I went on out, and it never dawned on me that I had the lock in my pocket until the officers searched me and pulled the lock out."

The defendant testified that he had nothing whatever to do with breaking into the place, that he did not steal anything, and that he did not go there with the intent to steal anything.

On cross-examination as to his criminal record, the defendant testified that he went to training school for storebreaking, had been convicted of "temporary larceny of an automobile," had been convicted of escape, and had been convicted in Federal court of the interstate transportation of a stolen motor vehicle.

[1, 2] Defendant assigns as error the failure of the trial judge to allow his motion for judgment of nonsuit. The State's contention that the defendant's motion for nonsuit should not be considered because it was not renewed as required by G.S. 15-173 at the conclusion of all the evidence is overruled. G.S. 15-173.1, enacted in 1967, provides that "[t]he sufficiency of the evidence of the State in a criminal case is reviewable upon appeal without regard to whether a motion has been made pursuant to G.S. 15-173 in the trial court." See also *State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969), and *State v. Davis,* 273 N.C. 349, 160 S.E. 2d 75 (1968). However, we hold that in the case before us there was ample evidence of the defendant's guilt to require its submission to the jury. In finding him guilty, it appears that the jury did not believe the defendant's version of how he happened to be at the place where this crime was committed at the time of its commission.

After the defendant entered a plea of not guilty, he then filed what is denominated a "pretrial motion" which bears no signature and in which he moves to dismiss the charges against him on the following grounds:

"(1.)

Held thirteen (13) days without a probable cause hearing:

(2.)

Denied the right to present evidence in his behalf:

(3.)

Held under excessive bond for duration of incarceration in

Forsyth County Jail under aforesaid charge:

### (1A.)

GEMERA v. STATE (See Mallory *Supra*) . . . .*(sic)* which states:

'That a person accused of a crime must be taken before a magistrate for the findings of probable cause within seventy-two (72) hours.'

### (1B.)

By holding the Defendant thirteen (13) days, the Court denied them 'due process of law' and 'equal protection of the law.' 'This also is a constitutional rights violation.'

### (2A.)

Defendants constitutional rights were violated at the preliminary hearing by the Court denying the accused the right to present evidence in his own behalf.

### (3A.)

After arrest and copies of the warrants had been served, the bond requirement as set by the issuing magistrate was increased by the arresting officer from ONE-THOUSAND DOLLARS to FIVE-THOUSAND DOLLARS. This was accomplished by merely marking through the amount the magistrate had typed on the warrants and writing in the altered amount. The arresting officer had no authority to change or alter, in any manner, the warrants. This was prejudicial and discriminatory with evident intent to 'sweat' and coerce the accused into admitting any charge that might be placed against him and/or to make sure he was 'punished' by keeping him in jail with a bond requirement that the arresting officer had reason to believe the accused could not raise.

### (4A.)

Denied a timely notice of the charges pending against the accused, by denying him a copy of the 'Bill of Indictment.' In doing this the defendants constitutional rights were violated.

(This has been ruled on by the U. S. Supreme Court in numerous cases) *(sic)*

Denied arraignment proceedings after the 'Bill of Indictment,' was returned:

Here are several rulings that specifically state that a defendant must be arraigned before trial or the trial is void and invalid.

(1)

WATT v. INDIANA, 388 U.S. 49.

Detention with arraignment is a time honored method for keeping the accused under the exclusive control of the police. They can operate at their leisure, the accused is wholly at their mercy. He is without the aid of counsel, or friends and is denied the protection of the magistrate. (From the time the Grand Jury returns an indictment until the defendant goes to trial, which is absolutely up to the State Solicitor you are in the hands of the police and without the protection of the court.)

McNAB v. U. S. TENN. (1945) *(sic)*

It has been emphasized by the courts that—Detention without arraignment is an illegal method for keeping the accused under coercion and exclusive control of the police while they build a case against the defendless *(sic)* defendant. These illegal methods will not be tolerated.

(This also applies to the thirteen (13) days the defendant was held before preliminary hearing) *(sic)*."

The defendant assigns as error the failure of the court to allow his motion. No authority is cited in his brief filed in this court in support of this assignment of error.

The record reveals that a warrant was issued for the defendant and served on him on 9 June 1970. The record also reveals that a "preliminary examination" was held on 22 June 1970, probable cause was found by a district court judge, and defendant was bound over to superior court under a $5,000 bond.

[3, 4] A preliminary hearing is not an essential prerequisite to the finding of a bill of indictment. *State v. Hartsell,* 272 N.C. 710, 158 S.E. 2d 785 (1968). A defendant who is tried on a bill of indictment, as this defendant was, is not entitled to a prelimi-

nary hearing on the bill of indictment as a matter of right. 4 Strong, N. C. Index 2d, Indictment and Warrant, § 1, p. 335. The fact that the defendant was given a preliminary hearing on a warrant thirteen days after his arrest on the warrant is not grounds for dismissal of an indictment against him which was obtained more than a month thereafter. Moreover, there is nothing in this record to indicate that a delay in holding this preliminary hearing was in any way improper or prejudicial to the defendant. See *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970).

[5, 6] The defendant contends in this unsigned and unverified motion that he was denied the right to present evidence in his behalf. There is a presumption in favor of the regularity of the proceedings in a trial court. In the case of *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353 (1968), it is said: "An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court." There is nothing in this record to suppport this part of the motion that the defendant was denied the right to present evidence in his behalf at any time. The unsigned and unverified motion appearing in this record does not support the allegations therein.

[7, 8] The defendant's contention that the charge in the bill of indictment which was returned by the grand jury at the 27 July 1970 session of court should be dismissed because he was theretofore held under what he contends was excessive bond is without merit. Moreover, in this case an appearance bond for this defendant in the sum of $5,000 was not excessive.

[9] The defendant's contention that the bond requirement set by the issuing magistrate was increased by the arresting officer is not supported by the record and is without merit. Neither is there anything in this record to indicate that there was any effort by anyone to coerce the defendant to admit anything.

[10] Defendant's contention that he was denied timely notice of the charges against him in the bill of indictment is not supported by the record, and no motion for a continuance on the grounds that he did not know what he was charged with was made by the defendant at the time of the trial.

Many of the allegations appearing in the motion are redundant. We are of the opinion and so hold that Judge Arm-

strong correctly denied the defendant's "pretrial motion" to dismiss the charges against him.

In the trial we find no prejudicial error.

No error.

Judges PARKER and GRAHAM concur.