STATE OF NORTH CAROLINA v. GEORGE EVERETT HATCHER

No. 69

(Filed 16 December 1970)

1. **Criminal Law § 21— delay in holding preliminary hearing**

    In a prosecution charging defendant with felonious assault and with armed robbery, defendant's contention that he was denied a speedy trial in that he was detained in jail for 41 days without a preliminary hearing is without merit, where a major reason for the delay in holding the preliminary hearing was that the prosecuting witness spent 28 days in the hospital recovering from the assault.

2. **Constitutional Law § 30; Criminal Law § 21— right to speedy trial — delays in preliminary hearing**

    Constitutional requirements with respect to a speedy trial apply to a preliminary hearing if unreasonable delay in conducting the hearing works a similar delay in the trial.

3. **Criminal Law § 66; Indictment and Warrant § 6— validity of arrest — contention of illegal photographic identification**

    Defendant's contentions that his arrest was based on an illegal photographic identification by the prosecuting witness and that the evidence obtained as a result of the arrest was consequently inadmissible, *held* without merit, where there was evidence that, prior to the photographic identification, the prosecuting witness had ample opportunity to observe the defendant on the night of the crime and to learn his name, and where the officer had probable cause to arrest the defendant. G.S. 15-20.

4. **Criminal Law § 66— "mug shot" photograph of defendant — admissibility**

    A police department "mug shot" photograph of the defendant was properly admitted to illustrate testimony relating to the defendant's

State v. Hatcher

identity, where the words "Greensboro Police Department—11/67" were deleted from the photograph prior to its admission.

**5. Robbery § 6; Criminal Law §§ 26, 127— arrest of judgment — conviction of two offenses arising out of the same occurrence**

A defendant who was convicted of armed robbery and assault with a deadly weapon is entitled to an arrest of judgment on the assault conviction when both offenses arose out of the same occurrence; defendant's contention that the rule should work in reverse so as to nullify the armed robbery conviction is not sustained.

**6. Criminal Law § 127— arrest of judgment**

Judgment may be arrested in a criminal prosecution when — and only when — some fatal error or defect appears on the face of the record proper.

Justice MOORE did not participate in the consideration or decision of this case.

APPEAL by defendant from decision of the Court of Appeals, 9 N.C. App. 352, 176 S.E. 2d 401, upholding judgment of *Collier, J.,* at 20 April 1970 Criminal Session, GUILFORD Superior Court.

Defendant is charged in separate bills of indictment with (1) a feloNoius assault upon James Edward Brown on 30 October 1969, and (2) armed robbery of James Edward Brown on 30 October 1969, including the felonious taking of Brown's 1962 Pontiac automobile valued at $500. The two charges arise out of one and the same altercation.

The State's evidence tends to show that on 30 October 1969 James Edward Brown lived in Room 539 at the O'Henry Hotel in Greensboro. Around 9 p.m. on that date he left his room and went to the General Greene Restaurant on Greene Street in the City of Greensboro. On arrival there he took a seat at the bar, ordered a glass of water and a beer, and talked with the waitress, Doris Campbell. The defendant George Everett Hatcher entered the restaurant, took a seat next to Brown, and they became acquainted. Defendant gave the name of Bobby Hatcher. They talked for about an hour and defendant left the restaurant. When Brown went outside about 10 p.m. defendant was standing there and asked Brown to drive him home, saying that he first wanted to stop by his girl friend's home. Brown consented to do so and they entered Brown's car, a 1962 Pontiac Bonneville, green two-door hardtop. Brown was not familiar with the area and defendant directed him. They drove to a house

on East Market Street where defendant went inside, returned about ten minutes later and instructed Brown to "keep out 70 toward Burlington." They went east on U.S. 70 and defendant instructed Brown to turn off on an unpaved road, which he did. They drove down the dirt road a short distance, passed a house, and defendant said, "This is as far as we're going." Brown stopped the car and looked over at defendant who had a pistol in his hand. Defendant told Brown to empty his pockets, shot the left front window out of the car and repeated the command: "I told you to empty your pockets." Brown was having difficulty emptying his pockets while in a sitting position and suggested that it would be better if he could get out of the car. As he turned to open the door defendant shot Brown in his right upper arm, and as Brown continued turning he felt two more shots in the back. At that time defendant got out of the car on the right side, walked around to the left side, opened the door and struck Brown a heavy blow on the head. The next thing Brown remembered he was lying on the ground and could feel defendant going through his pockets. Immediately thereafter Brown heard the car start up, turn around and leave. He next remembered being very cold and in much pain whereupon he began crawling toward the house they had passed. He saw the lights from the house and crawled toward the lights. When he finally arrived at this house he opened the door of a car that was parked in the yard and began honking the horn. A light appeared on the porch and someone inquired, "Who is there?" He told the person that he was hurt and had been robbed. Shortly thereafter in response to a telephone call Deputy Sheriff Pettigrew came and carried Brown to Cone Memorial Hospital.

The same night Officer Pettigrew carried Brown to the hospital, Brown told the officer that he had picked up a man at General Greene's and was carrying him home; that he heard a waitress call the man "Bobby Hatcher." Later that same night the officer brought a photograph to the hospital and told Brown he wanted him to look at it. Brown did so and immediately said, "That's the man who shot and robbed me."

A cut in Brown's head was sewed up by Dr. Coggeshall in the emergency room about 2 a.m. on the morning of October 31, and Dr. Deaton treated him thereafter. Examination of Brown revealed three pistol shot wounds on the right side. One struck his right arm just below the socket and broke the arm. The other two missed the arm, entered the right chest with one of

them piercing a lung and lodging in the backbone. Brown had blood in his kidney and blood was oozing into the chest. He was given appropriate treatment, remained in intensive care until 5 November and in the hospital until 28 November, at which time he was released and taken to Rockingham County to recuperate with his relatives. The doctor dismissed him on 29 December 1969.

As a result of information given him by James Edward Brown, Officer Pettigrew talked with the waitress Doris Campbell at the General Greene Restaurant and was informed by her that defendant and Brown left the restaurant together. The officer then went by defendant's home and saw Brown's 1962 Pontiac parked on the street directly in front of it. Officer Pettigrew then obtained warrants, returned to defendant's home at 601 Park Avenue at approximately 6 a.m. on the morning of October 31, knocked on the door, and advised defendant when he came to the door that he had two warrants for him. The officer read the warrants. Defendant seemed to be slightly intoxicated and came to the door with two pistols in his hands. Defendant was arrested and searched incident to the arrest. In his pockets the officer found a small pocket knife, the keys to Brown's car and part of the key ring which had been broken. In addition, what appeared to be a part of a .22 pistol was found in defendant's left front pocket together with 181 rounds of .22 ammunition. Examination of Brown's car there on the street revealed a shattered window on the driver's side, blood marks on the car and blood and broken glass on the seats. The license number coincided with the number which had been furnished the officer. The keys taken from defendant's pocket fit the switch and were used by the officer to start the car. Defendant's only statement was that he wished he had killed the man.

Defendant's evidence tends to show that on 30 October 1969 he was living with his parents at 601 Park Avenue. He saw James Edward Brown at Brandon's News Stand at approximately 7 p.m. and went to the General Greene Restaurant about 8 p.m. Brown was there and they drank and talked for quite a while and then went to Brown's car parked on the O'Henry Hotel parking lot and drank some whiskey. Brown made suggestive advances to him at that time, which he repulsed, and they reentered the General Greene Restaurant, had another beer, and left about 10 p.m. They returned to Brown's car and were accosted by two men, Ernest Chatman and Harold Johnson, who

appeared to be angry because Brown had failed to keep a date with them at his room, but Brown drew a gun and scared them away. Defendant and Brown then took another drink and drove to the Quick Stop on 421 south where they met two girls. Brown gave them canned drinks which he took from the trunk of his car and displayed ten one hundred dollar bills which he gave to defendant with instructions to show them to the girls. A man named Larry Wilson was there playing the harmonica and was invited to join defendant and Brown. Defendant returned Brown's $1,000 to him and they left, accompanied by Larry Wilson, and returned to the General Greene. They then proceeded to Huffine Mill Road ostensibly to see defendant's girl friend, but Brown took the wrong road, pulled off, and renewed his improper advances. When they were repulsed, Brown drew a gun on defendant and said, "Big boy do you realize what I can do with this?" Defendant hit Brown in the head with a chaser bottle, scuffling ensued, shots were fired, and defendant kicked Brown out one side of the car while falling out the other. Defendant ran and while running heard a shot "and something like metal hitting against metal." Shortly thereafter Larry Wilson overtook defendant driving the car. Defendant got in the car and they drove around but eventually returned to the place where Brown had been left. On arrival they found the sheriff's car at a nearby house and they continued to defendant's home on Park Avenue where defendant went in and told his mother what had happened. Defendant retired for the night and his kid brother took Larry Wilson home. The next morning the sheriff came to the house and arrested him.

Defendant admitted on cross examination that he had been tried and convicted on different charges of affray, fighting, assault on a police officer, accessory to common-law robbery, assault on a female, hit-and-run driving, public drunkenness, carrying a switchblade knife, driving drunk, resisting arrest, discharging firearms within the city limits, and felonious assault.

Following his arrest, defendant's bond was set at $5,000 in each case. After he was taken into custody on these charges, defendant's probation officer served a probation violation on him and he was thereafter in custody not only in these two cases but also on the probation matter. He was unable to make bond and was held in jail forty-one days pending recovery of James Edward Brown sufficiently to attend court and testify.

The jury returned a verdict of (1) guilty of assault with a deadly weapon and (2) guilty of armed robbery. On the assault conviction defendant was sentenced to two years in prison. On the armed robbery conviction he was sentenced to a term of 18-30 years in State's Prison. He appealed to the Court of Appeals and that court held that defendant, having been convicted of armed robbery, could not be convicted of the lesser included offense of assault with a deadly weapon, since both offenses arose out of the same act. The verdict in the assault case was thereupon set aside and the judgment arrested. The armed robbery conviction and the sentence pronounced thereon was upheld. Defendant appealed to this Court, allegedly as of right under G.S. 7A-30(1), asserting involvement of substantial constitutional questions, and assigning errors noted in the opinion.

*Wallace C. Harrelson, Public Defender, for the Defendant Appellant.*

*Robert Morgan, Attorney General, and Edward L. Eatman, Jr., Staff Attorney for the State.*

HUSKINS, Justice.

[1] Defendant asserts he was held in jail forty-one days without bail before a preliminary hearing was conducted and contends he was thus denied a speedy trial in violation of his rights under the Sixth Amendment to the Federal Constitution. He moved to quash the bills of indictment on that ground and assigns as error the denial of his motion.

[2] Constitutional requirements with respect to a speedy trial apply to a preliminary hearing if unreasonable delay in conducting the hearing works a similar delay in the trial. *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969). Here, however, neither the hearing nor the trial was unreasonably delayed to the prejudice of the defendant. The record discloses that the prosecuting witness, James Edward Brown, remained in Cone Memorial Hospital for twenty-eight days and then went to a relative's home in Rockingham County to recuperate. As soon as he was able to travel he came to Greensboro and the hearing was held. This alone negates the suggestion that prosecution of the cases against defendant was negligently or arbitrarily delayed by the State. In addition, however, the record further shows that while Brown was still in the hospital he was taken to the courthouse on one occasion to testify at a preliminary

hearing, but defendant's privately employed counsel was unable to attend and the hearing was postponed.

Principles governing the right to a speedy trial in North Carolina are outlined with clarity and accuracy by Justice Sharp in *State v. Johnson, supra.* The following language from that opinion is appropriate here:

> "The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. A defendant who has himself caused the delay, or acquiesced in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice. *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309; *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870, *appeal dismissed,* 382 U.S. 22, 15 L.Ed. 2d 16, 86 S.Ct. 227 (1965); *State v. Patton,* 260 N.C. 359, 132 S.E. 2d 891, *cert. denied,* 376 U.S. 956, 11 L.Ed. 2d 974, 84 S.Ct. 977 (1964); *State v. Webb,* 155 N.C. 426, 70 S.E. 1064.
>
> *         *         *
>
> "The possibility of unavoidable delay is inherent in every criminal action. The constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case."

In light of the facts this assignment is totally without merit.

[3] Defendant's second assignment of error is based on the contention that his pretrial identification by means of a photograph was so suggestive and conducive to misidentification as to deny him due process of law. On that premise he contends that his arrest was illegal and that the fruits of the search of his person incident to such arrest were tainted and erroneously admitted into evidence.

This assignment must fail because his arrest was legal. In *Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968), identification by photograph was expressly approved and it was held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentifica-

tion. This standard accords with our resolution of a similar issue in *Stovall v. Denno,* 388 U.S. 293, 301-302, 18 L.Ed. 2d 1199, 1206, 87 S.Ct. 1967, and with decisions of other courts on the question of identification by photograph." *See People v. Evans,* 39 Cal. 2d 242, 246 P. 2d 636 (1952) ; *State v. Accor* and *State v. Moore,* 277 N.C. 65, 175 S.E. 2d 583 (1970).

Applying the foregoing standard to this case, there was small chance indeed that the photograph led to misidentification of defendant. The victim Brown had talked to defendant for more than an hour on the night of the crime and had ample opportunity to observe him. Brown had heard the waitress refer to defendant as "Bobby Hatcher." This information was given to Officer Pettigrew and he had verified it by interviewing the waitress. The photograph was then lawfully obtained from the police files and shown to Brown—not so much for identification purposes but to verify an identification already made. Officer Pettigrew was strengthened in his belief that defendant was Brown's assailant when he found the victim's car parked on the street at defendant's place of residence. Certainly at that time he had within his knowledge sufficient facts and circumstances to warrant a man of reasonable caution in the belief that Brown had been shot and robbed and that this defendant was probably the man who did it. By any reasonable standard this constituted probable cause for issuance of the warrant and for defendant's arrest and prosecution. *State v. Matthews,* 270 N.C. 35, 153 S.E. 2d 791 (1967) ; G.S. 15-20. Viewed in that context and evaluated in light of the totality of circumstances, there is little room for doubt that defendant's identification was correct.

We therefore hold that the identification procedure used was not such as to deny defendant due process of law and that his subsequent arrest was in all respects lawful. The items seized from him were taken incident to a valid arrest and were therefore properly admitted into evidence. *See State v. Austin,* 276 N.C. 391, 172 S.E. 2d 507 (1970) ; *State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50 (1970) ; *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969) ; *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970) ; *Gilbert v. California,* 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951 (1967) ; *Simmons v. United States, supra; Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684, 84 A.L.R. 2d 933 (1961).

[4] The State offered various photographs of the victim's car and the photograph of defendant which Officer Pettigrew had

obtained from the police files. The latter was offered after the words "Greensboro Police Department" and the date "11/67" had been covered by an evidence sticker in the absence of the jury. Defendant objected to all the photographs and particularly to the police department photograph. The court instructed the jury to "consider these photographs and all photographs only for the purpose of illustrating the testimony of the witness, and for no other purpose, if you find they do so illustrate his testimony." Defendant's third assignment of error is to the admission of the police department photograph.

We find no North Carolina case which has decided this question. There is a conflict of authority among other jurisdictions on the admissibility of "mug shots" or "rogue's gallery" photographs of a defendant. See Annotation: Admissibility and Prejudicial Effect of Admission, of "Mug Shot," "Rogue's Gallery" Photograph, or Photograph Taken In Prison, of Defendant in Criminal Trial, 30 A.L.R. 3d 908 (1970). In the following cases such photographs were held properly admitted when offered for identification purposes *even though they contained visible markings: United States v. Amorosa,* 167 F. 2d 596 (1948) ; *Dirring v. United States,* 328 F. 2d 512 (1964), *cert. den.* 377 U.S. 1003, *reh. den.* 379 U.S. 874; *People v. Bracamonte,* 253 Cal. App. 2d 980, 61 Cal. Rptr. 830 (1967) ; *People v. Maffioli,* 406 Ill. 315, 94 N.E. 2d 191 (1950) ; *People v. Purnell,* 105 Ill. App. 2d 419, 245 N.E. 2d 635 (1969) ; *State v. Hopper,* 251 La. 77, 203 So. 2d 222 (1967) ; *State v. Childers,* 313 S.W. 2d 728 (Mo. 1958).

Photographs offered for identification purposes and *bearing visible markings* were held erroneously admitted in the following cases: *People v. Cook,* 252 Cal. App. 2d 25, 60 Cal. Rptr. 133 (1967) ; *People v. Murdock,* 39 Ill. 2d 553, 237 N.E. 2d 442 (1968) ; *Blue v. State,* 235 N.E. 2d 471, 30 A.L.R. 3d 902 (Ind. 1968) ; *Matters v. Commonwealth,* 245 S.W. 2d 913 (Ky. 1952).

In this State photographs are admissible to illustrate the testimony of a witness. "[W]here there is evidence of the accuracy of a photograph, a witness may use it for the restricted purpose of explaining or illustrating to the jury his testimony relevant and material to some matter in controversy." *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824 (1948). *Accord, State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969) ; *State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512 (1970). If a photograph is relevant and material it will not be excluded because it was

not made contemporaneously with the occurrence of the events at issue. *State v. Lentz,* 270 N.C. 122, 153 S.E. 2d 864 (1967). *See generally* Stansbury, North Carolina Evidence (2d Ed., 1963) § 34.

Defendant contends, however, that introduction of the "mug shot" photograph of him tended to apprise the jury of the fact that he had been in trouble before, reflected unfavorably upon his character and suggested that he had been convicted of other crimes. Upon the facts before us defendant's contention is unsound and cannot be sustained. Before the jury was allowed to see the photograph in question, the portions which might have been prejudicial to him, *i.e.,* the name of the police department and the date, were covered by an evidence tag. This left only an ordinary photograph, which was offered and admitted for illustrative purposes bearing upon identification of defendant. The photograph was relevant and material on the question of identity and could not have been prejudicial in the sense suggested by defendant. There was nothing on it to connect defendant with previous criminal offenses. In the following cases photographs offered for identification purposes and *containing labels and markings which were covered or removed* were held properly admitted: *Cooper v. State,* 182 Ga. 42, 184 S.E. 716, 104 A.L.R. 1309 (1936); *State v. O'Leary,* 25 N.J. 104, 135 A. 2d 321 (1957); *State v. Tate,* 74 Wash. 2d 261, 444 P. 2d 150 (1968); *People v. Fairchild,* 254 Cal. App. 2d 831, 62 Cal. Rptr. 535 (1967), *cert. den.* 391 U.S. 955; *Johnson v. State,* 247 A. 2d 211 (Del. Sup. 1968); *Huerta v. State,* 390 S.W. 2d 770 (Tex. Crim. 1965).

We therefore hold that the photograph, with inscription and date deleted, was properly admitted for illustrative purposes on the question of identity. This assignment is overruled.

[5, 6] Defendant's final assignment of error is addressed to the failure of the court to allow his motion in arrest of judgment in the armed robbery conviction. He contends that his conviction of assault with a deadly weapon bars prosecution for the greater offense of armed robbery arising out of the same acts.

"In a criminal prosecution, . . . judgment may be arrested when—and only when—some fatal error or defect appears on the face of the record proper." *State v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1970). *Accord, State v. Higgins,* 266 N.C. 589, 146 S.E. 2d 681 (1966); *State v. Eason,* 242 N.C. 59, 86 S.E. 2d

774 (1955). Here, the record proper shows upon its face that defendant was charged in two bills of indictment which were consolidated for trial, one bill charging felonious assault and the other charging armed robbery. The jury convicted defendant of assault with a deadly weapon in one case and armed robbery in the other. Since both offenses of which he was convicted arose out of the same occurrence, the former is a lesser included offense of the latter. "An indictment for robbery with firearms will support a conviction of a lesser offense such as common law robbery, assault with a deadly weapon, larceny from the person, simple larceny or simple assault, if a verdict for the included or lesser offense is supported by the evidence on the trial." *State v. Davis,* 242 N.C. 476, 87 S.E. 2d 906 (1955). *Accord, State v. Parker,* 262 N.C. 679, 138 S.E. 2d 496 (1964).

Defendant having been simultaneously convicted of armed robbery and of the lesser included offense of assault with a deadly weapon, and both offenses arising out of the same conduct, the Court of Appeals correctly set aside the verdict of guilty of assault with a deadly weapon and arrested the judgment in that case. Defendant's ingenious argument that the rule should work in reverse so as to nullify the armed robbery conviction is not sustained. *State v. Midyette,* 270 N.C. 229, 154 S.E. 2d 66 (1967), cited by defendant, supports our conclusion.

The decision of the Court of Appeals upholding judgment of the trial court in the armed robbery case and arresting judgment in the assault case is

Affirmed.

Justice MOORE did not participate in the consideration or decision of this case.