STATE OF NORTH CAROLINA v. CHARLIE RICHARDSON, JR.

No. 115

(Filed 15 December 1971)

1. Criminal Law § 66— in-court identification — necessity for voir dire

The trial court did not err in permitting an in-court identification of defendant by a robbery and assault victim without first finding on a voir dire examination that such identification did not result from an illegal, out-of-court confrontation, where there was no evidence that the victim identified, or even saw, defendant between the time of the robbery and assault and the time of his in-court identification.

2. Arrest and Bail § 7— right to communicate with friends and relatives

The record does not support assertions by defendant that he was illegally imprisoned in jail for five days without a warrant and that during this interval he was not afforded counsel or permitted to communicate with friends or relatives.

3. Criminal Law §§ 75, 84— pistol voluntarily produced by defendant — failure to hold voir dire

Where the record shows that, in the course of the sheriff's investigation of a felonious assault and an armed robbery, the sheriff asked defendant whether he owned a weapon and defendant got a .38 pistol from his room and handed it to the sheriff, the trial court did not err in admitting the pistol into evidence and permitting the sheriff to testify where it was obtained without first finding on voir dire that defendant voluntarily produced the pistol, there being no request for or occasion for a voir dire hearing.

4. Robbery § 5— armed robbery — failure to submit common law robbery

In this armed robbery prosecution, the trial court did not err in failing to instruct the jury on the lesser included offense of common law robbery where the State's evidence showed a completed robbery at gunpoint and there was no evidence that would support a finding that defendant was guilty of the lesser offense.

5. Robbery § 1— elements of robbery and armed robbery — assault — assault with deadly weapon

The crime of robbery includes an assault on the person; the crime of armed robbery defined in G.S. 14-87 includes an assault on the person with a deadly weapon.

6. Assault and Battery § 5; Robbery § 1— felonious assault — intent to kill — serious injury — armed robbery

The elements of intent to kill and infliction of serious injury which are essentials of the crime of felonious assault defined in G.S. 14-32(a) are not essentials of the crime of armed robbery defined in G.S. 14-87.

7. **Assault and Battery § 4; Robbery § 1— assault in perpetration of robbery**

An assault is committed in the perpetration of a robbery if made to overcome resistance, to effectuate flight, or to eliminate the possibility of identification by the victim, notwithstanding the assault may occur after the robber has taken possession of the victim's goods.

8. **Assault and Battery § 5; Robbery § 6— felonious assault during robbery — separate crime**

The fact that a felonious assault is committed during the perpetration of armed robbery does not deprive the felonious assault of its character as a complete and separate felony.

9. **Assault and Battery § 5; Criminal Law § 26; Robbery § 6— armed robbery — felonious assault — continuous course of conduct — conviction of both crimes**

When separate indictments for armed robbery and felonious assault based on separate features of one continuous course of conduct are tried together, verdicts of guilty as charged will support separate judgments for each crime, since all of the essential elements of felonious assault are not essential elements of armed robbery, notwithstanding the two crimes share the common element of assault with a deadly weapon.

Justice LAKE concurring.

Justice HIGGINS concurring in the decision in Case No. 2296 and dissenting in the decision in Case No. 2295.

APPEAL by defendant from *Kivett, J.,* September 14, 1970 Criminal Session of ANSON Superior Court, transferred for initial appellate review by the Supreme Court under general order of July 31, 1970, entered pursuant to G.S. 7A-31(b)(4), docketed and argued as No. 34 at Spring Term 1971.

These criminal prosecutions were based on two bills of indictment, *viz.:*

In Case No. 2295 the bill charged that on July 2, 1970, defendant, Charlie Richardson, Jr., " . . . did, unlawfully, wilfully, and feloniously assault Lester Smith with a certain deadly weapon, to wit: a gun, with the felonious intent to kill and murder the said Lester Smith, inflicting serious injuries, not resulting in death, upon the said Lester Smith, to wit: by shooting him about the head, face, body and limbs, . . . . "

In Case No. 2296 the bill charged that on July 2, 1970, defendant, Charlie Richardson, Jr., " . . . unlawfully, wilfully, and feloniously, having in his possession and with the use and

threatened use of firearms, and other dangerous weapons, implements, and means, to wit: A Gun, A 22 cal. pistol, whereby the life of Lester Smith was endangered and threatened, did then and there unlawfully, wilfully, forcibly, violently and feloniously take, steal, and carry away money in amount of $50.00; 22 Cal. Pistol, and a wallet, of the value of less than $200. from the presence, person, place of business . . . of Lester Smith . . . . "

On July 16, 1970, District Court Judge Langley, after inquiry, found defendant an indigent and appointed Enos T. Edwards, Esq., to represent him.

In the superior court, defendant, through his court-appointed counsel, entered pleas of not guilty to the charges in the indictments. Without objection, the two cases were consolidated for trial.

The State's evidence tends to show the facts narrated below.

Bigguns Texaco Service Station is located on Highway 74 about 14 miles east of Wadesboro, N. C. Lester Smith was the employee on duty at about 8:00 a.m. on July 2, 1970, when the alleged robbery and assault occurred. Smith first observed defendant while Smith was engaged in carrying out some trash. Defendant was then coming down the side of the road toward the station. Upon Smith's return to the station, defendant was standing at the front door. Defendant followed Smith into the station and asked for a package of gum.

When Smith turned around to hand defendant the gum, defendant pulled a .38 pistol out from under his shirt, pointed it in Smith's face and told Smith "it was a holdup and to do as he was told." While holding the .38 pistol in his right hand and pointing it in Smith's face, defendant took approximately $50.00 from the cash register and Smith's loaded .22 caliber pistol from a cigar box near the cash register. Defendant made Smith take off his pants and shoes, go to the back of the store, lie down with his face on his hands. Defendant then shot Smith three times in the back of the head with the .22 caliber pistol.

Smith remained conscious but continued to lie still on the floor until defendant went out and shut the door. Thereafter Smith went to a side door and saw defendant about one-tenth of a mile away, walking along the rural paved road which ran southward. Smith then came out the front door, stopped a car

and was carried to a hospital where he was operated on and three .22 caliber bullets were extracted from his head.

On July 7, 1970, "[i]n carrying out his investigation," Sheriff Jarman saw defendant at Greene's Peach Camp, a campground for migrant workers during peach season. The camp is located "some 3 miles from Bigguns Texaco." After advising him of his constitutional rights, Sheriff Jarman asked defendant if he was the owner of any weapons of any kind. Defendant admitted he had a gun and got a .38 caliber pistol from his room and handed it to the sheriff. Then and since then defendant has steadfastly denied being at Bigguns Texaco on July 2, 1970. On July 7, 1970, he told the sheriff he had spent the night of July 1, 1970, at the home of Jimmy Little, a friend, in Harlem Heights, Wadesboro, N. C., and was there at 8:00 a.m. on the following morning. The sheriff never did find the .22 pistol with which Smith was shot.

Defendant testified and offered evidence tending to show the facts narrated below.

He did not rob or assault Smith. He did not know he was suspected of such a robbery and assault until July 7, 1970, about 7:00 a.m., when Sheriff Jarman came to Greene's Peach Camp and told him that "he wanted to talk with him for suspicion." After talking with Sheriff Jarman, defendant went back into his room and got his pistol and gave it to a deputy who had accompanied Sheriff Jarman.

Defendant spent the night of July 1, 1970, in Harlem Heights, Wadesboro, N. C., in the home of his friends, Jim Little and wife, Ella Little, and stayed there until the morning of Thursday, July 2, 1970. Defendant testified he left the home with Jim Little about 9:15 (sic) a.m. and that he stopped at a bank in Wadesboro "about 7 minutes to 9:00 o'clock" before going to a district court session in Wadesboro. Jim Little testified he and defendant left the Little home at about 8:30 a.m. in a cab and got to Wadesboro about 8:45. He saw defendant again about 9:15 at which time defendant said he was going to court. Ella Little testified her husband and defendant left "about 7:30 or 8:00 o'clock A.M." at which time defendant said "he was coming to a trial."

Defendant was not working on July 2, 1970, because he had been notified to be in district court in Wadesboro at 9:30

a.m. on that date to testify as a State's witness in a criminal case in which one Lee Vernon Henry was charged with stealing his (Richardson's) polaroid camera. He testified he arrived in district court at approximately 9:05 a.m. and remained there until the larceny case against Henry was disposed of. This occurred "a little after 12:00 o'clock." He was not a witness because Henry pleaded guilty. He received his camera and signed a release to Sgt. Hooks of the Police Department.

It was stipulated that a criminal proceeding was had against Lee Vernon Henry on July 2, 1970, in the District Court of Anson County, and that the defendant Lee Vernon Henry entered a plea of guilty as charged.

On July 1, 1970, defendant bought the .38 pistol in Ellerbe and paid $25.00 for it. He bought it with money he had found in a billfold lying beside the road. He had delivered the billfold and its contents other than money (bills) to the sheriff. Before going to the district court hearing on July 2, 1970, he left the .38 with a cab driver in Wadesboro. He expected to get it when court was over and register it with the sheriff but did not see that cab driver until the following day.

On cross-examination defendant admitted he knew the location of the Bigguns Texaco Station and went by it almost daily. He admitted he had been tried and convicted "twice for assault, once for larceny of some wrenches, and one time for breaking and entering."

In each case, the jury returned a verdict of guilty as charged. In Case No. 2296 charging armed robbery, the court imposed a sentence of not less than 22 nor more than 30 years. In Case No. 2295 charging felonious assault, the court imposed a sentence of not less than 8 nor more than 10 years, this sentence to commence upon expiration of the sentence imposed in Case No. 2296. Defendant excepted and appealed.

Upon finding that defendant was then an indigent, the court appointed E. A. Hightower, Esq., to represent him in prosecuting his appeal and ordered the state of North Carolina to pay all expenses incident thereto.

*Attorney General Morgan and Staff Attorney Ricks for the State.*

*E. A. Hightower for defendant appellant.*

State v. Richardson

BOBBITT, Chief Justice.

Neither in the trial court nor here has defendant challenged the sufficiency of the evidence to require submission to the jury and to support the verdicts. Apart from the isolated instruction referred to in our discussion of Assignment of Error #4, the court's charge is not made a part of defendant's case on appeal.

We shall consider first the five assignments of error set forth in the record on appeal. Thereafter, we shall consider the motion defendant filed in this Court for arrest of judgment in Case No. 2295, the felonious assault case.

[1] In Assignment #1, defendant asserts "[t]he Court erred in permitting the in-court identification of the defendant by the witness Smith without first finding, on a voir dire examination, that his in-court identification had an independent origin and did not result from illegal, out-of-court confrontation." In his testimony at trial, Smith pointed out and positively identified defendant as the man who entered the service station and robbed and shot him. Assignment #1 is without merit for the simple reason there is no evidence whatever that Smith identified, or even saw, defendant between the time of the robbery and assault and the time of his in-court identification. The in-court identification, therefore, could not have been influenced or tainted by prior confrontation because there was no such prior confrontation.

[2] Assignments #2 and #5 contain assertions that defendant was arrested without a warrant on July 7, 1970, and illegally imprisoned in jail without a warrant from July 7, 1970, until July 12, 1970, and that during this interval defendant was not advised of his constitutional rights or "afforded counsel" or permitted to communicate with friends or relatives. These assertions are not supported by the record. All the record discloses with reference to what occurred on July 7, 1970, is contained in the testimony of Sheriff Jarman and of defendant. The record shows that warrants for the arrest of defendant for armed robbery and felonious assault were issued July 12, 1970, and were executed the same day. Nothing in the record shows defendant was arrested and "imprisoned in jail" prior to July 12, 1970, or that he at any time was denied permission to communicate with friends or relatives. The record does disclose the formal appointment of counsel for defendant on July 16, 1970, the date

of the preliminary hearings. There being no basis for considera-
tion of the assertions therein, Assignments #2 and #5 are over-
ruled.

[3]  In Assignment #3, defendant asserts "[t]he Court erred
in permitting the .38 caliber pistol to be introduced into evidence
and in permitting the Sheriff to relate where it was obtained
or that it was obtained, without first finding, upon voir dire in
the absence of the jury, that the production of the pistol by the
defendant was done voluntarily and understandingly." Under the
circumstances disclosed by the record, there was no request for
or occasion for a *voir dire* hearing. The record indicates Sheriff
Jarman's conversation with defendant on July 7, 1970, was
simply an incident in the course of Sheriff Jarman's investiga-
tion of the armed robbery and felonious assault committed on
Lester Smith on July 2, 1970. An inference may be drawn from
the facts in evidence that the investigation by Sheriff Jarman
continued in order to afford opportunity to check the statements
made to him by defendant on July 7, 1970, when defendant volun-
tarily delivered the .38 pistol to Sheriff Jarman.

[4]  The *only portion* of the charge in the record is the follow-
ing: "Now, as to the charge in that Bill of Indictment, which is
referred to as armed robbery, you may return one of two ver-
dicts, members of the jury. You may either find the defendant
guilty of armed robbery, as charged, or not." Assignment #4
is based on defendant's exception to this isolated excerpt from
the charge. Defendant contends the court erred in charging the
jury in Case No. 2296 that they might return a verdict of guilty
of armed robbery as charged or a verdict of not guilty. Since a
charge must be considered contextually and not piecemeal, the
record is insufficient to support this assignment. Even so, de-
fendant's contention that the court should have instructed the
jury that they might return a verdict of guilty of common law
robbery is without merit. The State's evidence, which showed a
completed robbery of Lester Smith at gunpoint, was positive
and unequivocal as to each and every element of the crime
charged in the bill of indictment in Case No. 2296. The crucial
issue was whether the crime was committed *by defendant*. There
was no evidence that would warrant or support a finding that
defendant was guilty of a lesser included offense. Hence, the
court's instruction was proper. *State v. Williams,* 275 N.C. 77,
88, 165 S.E. 2d 481, 488 (1969) ; *State v. Carnes,* 279 N.C. 549,
554, 184 S.E. 2d 235, 238-39 (1971).

[9]  Defendant's motion that this Court arrest the judgment in Case No. 2295 is based on the contention that the felonious assault for which he was indicted and convicted in Case No. 2295 is a lesser included offense of the armed robbery for which he was indicted and convicted in Case No. 2296. Answering, the Attorney General contends the motion should be denied. We agree.

[5, 6]  The crime of robbery includes an assault on the person. *State v. Hicks,* 241 N.C. 156, 159, 84 S.E. 2d 545, 547 (1954). The crime of armed robbery defined in G.S. 14-87 includes an assault on the person with a deadly weapon. The crime of felonious assault defined in G.S. 14-32(a) is an assault with a deadly weapon which is made with intent to kill and which inflicts serious injury. These additional elements of the crime of felonious assault are not elements of the crime of armed robbery defined in G.S. 14-87.

If a person is convicted simultaneously of armed robbery and of the lesser included offense of assault with a deadly weapon, and both offenses arise out of the same conduct, as in *State v. Parker,* 262 N.C. 679, 138 S.E. 2d 496 (1964), and *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970), and separate judgments are pronounced, the judgment on the separate verdict of guilty of assault with a deadly weapon must be arrested. In such case, the armed robbery is accomplished by the assault with a deadly weapon and *all* essentials of this assault charge are essentials of the armed robbery charge. However, if a defendant is convicted simultaneously of armed robbery and of *felonious* assault under G.S. 14-32(a), neither the infliction of serious injury nor an intent to kill is an essential of the armed robbery charge. A conviction of armed robbery does not establish a defendant's guilt of felonious assault.

In the present case, the evidence shows that, by the use or threatened use of his .38 pistol, defendant robbed his victim of cash and of a .22 pistol and ordered him to go to the back of the store and lie down with his face on his hands. Thereafter, while the victim was lying on the floor, defendant shot him in the head, closed the door and left when his victim was apparently dead. Thus, separate assaults were committed in quick succession, the first being an assault with a deadly weapon and the second an assault with a deadly weapon which was made with intent to kill and which inflicted serious injuries.

[7, 8] It is true that both of these assaults were committed in the perpetration by defendant of the felony of armed robbery defined in G.S. 14-87. An assault is committed in the perpetration of a robbery if made to overcome resistance, to effectuate flight, or to eliminate the possibility of identification by the victim, notwithstanding the assault may occur after the robber has taken possession of the victim's goods. However, the fact that a felonious assault is committed during the perpetration of armed robbery does not deprive the felonious assault of its character as a complete and separate felony.

Here the injury inflicted by the felonious assault was not fatal. However, the injury was serious and the assault was made with intent to kill. The question is whether the felonious assault is to be ignored as an independent felony simply because an assault with a deadly weapon is an essential element both of felonious assault and of armed robbery and the permissible punishment for armed robbery is greater than the permissible punishment for felonious assault. We perceive no sound reason why two felonies should be treated as one simply because they share a single essential element, when they consist of additional separate elements.

Our research has disclosed few decisions bearing closely upon the precise question under consideration. *People v. Thomas,* 59 Cal. App. 2d 585, 139 P. 2d 359 (1943), presented an analogous factual situation. In *Thomas,* the defendants were charged with the crime of robbery (Count I) and of assault by means of force likely to produce great bodily injury (Count II), offenses committed on the same occasion and in the course of the same series of acts. As stated in the opinion: "Defendants pleaded guilty to the charge of assault by means of force likely to produce great bodily injury (Count II), and not guilty to the charge of robbery (Count I). When placed on trial for the latter crime they interposed a plea of once in jeopardy and at the conclusion of their trial moved to dismiss the robbery charge, upon the grounds of former conviction and former jeopardy. The motions were denied, defendants were found guilty of robbery and were sentenced for each crime, to state prison for the crime of robbery and to the county jail for the assault, the sentences to run concurrently. All of them have appealed from the conviction of robbery." *Id.* at 586-87, 139 P. 2d at 360. The court sustained the conviction of robbery and the sentence pronounced thereon. Apposite excerpts from the opinion include the following:

"The two felonies charged to appellants, having different essential elements, are separate and distinct offenses . . . . Neither offense is included within the other and appellants in a prosecution for one of the offenses could not have been convicted of the other. Appellants' contention is not that they have been convicted twice of the same offense or that either of the offenses of which they have been convicted is included in the other. They say only that they might have been convicted of simple assault in either prosecution, which is correct, but they overlook the important fact that in neither prosecution were they adjudged guilty only of the offense of simple assault . . . ." *Id.* at 588, 139 P. 2d at 361.

"Appellants' argument amounts only to this: that in prosecutions for two distinct and different felonies, each involving an element of criminality not found in the other, and each involving the act of assault constituting the offense of simple assault, there can be a conviction of one or the other of the major crimes but not convictions of both. . . . [Defendants] stand convicted of two felonies, each involving an act of assault upon the person of their victim, but each involving an element distinguishing the major offense from the offense of simple assault. They would have us hold that they have been convicted twice solely of the offense of simple assault, which is true only in the sense that the plea of guilty in the one case or the conviction in the other would have barred further prosecution for the offense of simple assault or any other included offense. But all that has happened is that they have been convicted of two felonies committed in the course of a continuous series of acts, which offenses have the common element of assault on the person of the victim constituting the offense of simple assault.

"While the law jealously protects a culprit from double punishment, it does not allow him to commit two separate and distinct offenses for the price of one merely because they have some minor common element. Here the defendants assaulted their victim with great violence, rendering him unconscious, and while he was unconscious they robbed him; they might just as well have robbed him or attempted to rob him first and attacked him afterwards, as was the case in *People v. Bentley, supra,* (1888) 77 Cal. 7 [18 P. 799, 11 Am. St. Rep. 225]. It would be wholly illogical to say that in either case one of the major crimes must go unpunished because, perchance, appellants in

State v. Richardson

each felony prosecution might have been, although they were not, convicted only of the offense of simple assault. Of course, as we have said, two convictions of simple assault could not stand. A plea of guilty to simple assault in one case and a conviction of simple assault in the other, would be an acquittal of the greater offenses charged and would eliminate the elements which distinguish each in the major offenses from the other and from the offense of simple assault. But the judgments here establish the existence of those distinct elements as realities and they cannot be ignored. Appellants are subject to punishment for the offense of assault by means of force likely to produce great bodily injury and for the offense of robbery, because these are separate and distinct offenses, neither of which is necessarily included within the other. Although the *act* of assault is involved in each, in neither case can it be said that defendants are suffering punishment for the mere *offense* of simple assault and they are therefore not suffering double punishment." *Thomas* at 588-90, 139 P. 2d at 361-62.

Decisions in accord with *People v. Thomas, supra,* include the following: *State v. Moore,* 326 Mo. 1199, 33 S.W. 2d 905 (Mo. 1930) ; *Foss v. State,* 36 Ohio App. 417, 173 N.E. 296 (1930) ; *Higgins v. Superior Court,* 185 Cal. App. 2d 37, 7 Cal. Rptr. 771 (1960) ; *Commonwealth ex rel. Hairston v. Myers,* 202 Pa. Super. 214, 195 A. 2d 813 (1963).

In *People v. Logan,* 41 Cal. 2d 279, 260 P. 2d 20 (1953), the defendant was convicted of an assault with a deadly weapon (Count 1) and of robbery in the first degree, that is, robbery committed by one "armed with a dangerous or deadly weapon" (Count 2). Both offenses arose out of the same conduct. As in our decisions in *State v. Parker, supra,* and *State v. Hatcher, supra,* the judgment for an assault with a deadly weapon was reversed on the ground *all* essentials of assault "with a deadly weapon" were essentials of robbery committed by one "armed with a dangerous or deadly weapon." Justice Schauer, speaking for the Supreme Court of California, distinguished this case from *People v. Thomas, supra,* on the ground that neither of the offenses for which the defendants in *Thomas* were convicted contained *all* the essentials of the other but each contained additional separate elements.

Decisions cited as tending to support a different conclusion are discussed below.

In *State v. Richardson,* 460 S.W. 2d 537 (Mo. 1970), the defendant's attempted robbery by the threatened use of a butcher knife was thwarted by the would-be victim and no injury was inflicted. The defendant was convicted of attempted robbery. Later he was convicted of "assault with intent to maim without malice," and he appealed this conviction on the ground of double jeopardy. The Missouri Supreme Court upheld his plea.

The fundamental difference between the present case and the Missouri *Richardson* case lies in the type of assault for which defendant was convicted. Defendant herein has been found guilty of "assault with a deadly weapon, with intent to kill, *inflicting serious injury"*—not merely assault with intent to kill. The Attorney General of Missouri argued that assault with intent to rob and assault with intent to maim were different criminal offenses, even if involving the very same act. But the Missouri Supreme Court held the State could not split one act of assault into two crimes *merely by changing the name of the intent.* It was noted that proof of the unlawful act gives rise to a presumption of criminal intent, which presumption was of both intent to rob *and* intent to maim. In the first trial, the prosecutor had elected to treat the criminal intent as the intent to rob. There is no presumption of serious injury. Serious injury must be separately proved in a prosecution under our statute, G.S. 14-32(a) ; serious injury need not be shown at all in a prosecution under G.S. 14-87, for armed robbery.

Likewise, in *Wilcox v. State,* 74 Tenn. (6 Lea) 571, 40 Am. Rep. 53 (1880), and in *Duckett v. State,* 454 S.W. 2d 755 (Tex. Crim. 1970), convictions for "assault with intent to murder" followed robbery convictions, and the assault convictions met reversal. In neither case was felonious assault *resulting in serious injury* charged. In neither case was the State put to the proof of the additional, critical element of serious injury (though it does appear that the victim in *Duckett* testified to being "shot").

The court in *Duckett* makes much of the proposition that " '[t]he State can carve the minor part of the transaction . . . or can carve the major part of the transaction . . . . However, the State can carve only the one time.' " *Duckett* at 757, quoting *Paschal v. State,* 49 Tex. Crim. 111, 114, 90 S.W. 878, 880 (1905). We agree that a single independent criminal offense can only be punished once. We do *not* agree the same is true of a criminal

transaction which involves more than one independent criminal offense. "To support a plea of *former acquittal*, it is not sufficient that the two prosecutions should grow out of the same transaction; but they must be for the same offense; *the same, both in fact and in law.*" *State v. Nash*, 86 N.C. 650, 651 (1882).

It is noteworthy that the maximum penalties for armed robbery in Missouri, Tennessee and Texas are far more severe than in North Carolina. The maximum penalty in North Carolina is 30 years in prison (minimum 5 years). G.S. 14-87. In Missouri, the maximum penalty is death (minimum 5 years), 41 Vernon's Mo. Stats. § 560.135 (1953); in Tennessee, death (minimum 10 years), 7 Tenn. Code § 39-3901 (1970 Cum. Supp.); in Texas, death (minimum 5 years), 3 Vernon's Texas Penal Code, art. 1408 (1953).

[9] The question before us is whether, when separate indictments for armed robbery and felonious assault based on separate features of one continuous course of conduct are tried together, and verdicts of guilty as charged are returned, these verdicts provide support for separate judgments.

The motion in arrest of judgment in Case No. 2295 is denied.

Defendant having failed to show error in the trial, the verdicts and judgments will not be disturbed.

No error.

Justice LAKE, concurring.

I concur in the majority opinion solely because the two offenses charged involved separate assaults. The assault with a deadly weapon which was an essential element of the robbery, with which the defendant was charged in Case No. 2296, was over and done with when the assault with a deadly weapon with intent to kill, inflicting serious injuries not resulting in death, with which he is charged in Case No. 2295, occurred.

Had there been no display or other use of the .38 pistol prior to the completion of the robbery by the taking of the money and the .22 pistol, the defendant, in my opinion, would have been guilty of common law robbery only. The subsequent shooting of Smith with his own .22 pistol, taken from him in the robbery, was a separate offense, no element of which was an element of

State v. Richardson

the crime of armed robbery. The fact that two separate pistols were used is not, of course, the determining circumstance upon which I reach this conclusion, but it does point up the separateness of the two offenses.

I, therefore, concur in the majority view that the defendant has been convicted of two separate, distinct crimes and can be punished for both.

I am also inclined to the view suggested in the majority opinion that the second assault, though committed after the offense of robbery was completed, may be deemed to have been committed in the perpetration of the felony of armed robbery, within the meaning of G.S. 14-17, so that, had Smith died from the wounds inflicted upon him, the defendant might have been convicted of first degree murder. However, that question is not before us for decision in this case.

It is my view that the majority opinion necessarily leads to conclusions not consistent with the constitutional protection against double jeopardy. The constitutional prohibition against being put twice in jeopardy for the same offense cannot be avoided by the State by the simple process of consolidating two separate indictments for trial, as was done in this case.

The double jeopardy question is not resolved by merely observing, correctly, as the majority opinion does here, that each of the two principal offenses charged in the respective indictments involves an element not involved in the other. It is my understanding that the test of double jeopardy is whether the defendant, upon trial under the second indictment, could be convicted of any offense for which he could have been convicted upon trial under the first indictment. If so, by being brought to trial under both indictments, whether in succession or simultaneously, he is placed in double jeopardy of a conviction for that offense, which the Constitution forbids. *State v. Overman*, 269 N.C. 453, 464, 153 S.E. 2d 44; *Re Nielsen*, 131 U.S. 176, 9 S. Ct. 672, 33 L. Ed. 118; *Commonwealth v. Comber*, 374 Pa. 570, 97 A 2d 343, 37 ALR 2d 1058; Anno. 37 ALR 2d 1068; 21 Am. Jur. 2d, Criminal Law, § 187.

That which makes the constitutional protection against double jeopardy inapplicable to the present case is not the circumstance that each of the two offenses, armed robbery and felonious assault, in addition to the common element of assault

with a deadly weapon, has an element not present in the other. The controlling circumstance, on that question, in this case is the fact that here we are concerned with two separate, distinct assaults with a deadly weapon. The second assault, in my opinion, was not an element of the offense of armed robbery and, had it been the only assault with a deadly weapon, the conviction of armed robbery could not be sustained. Conversely, under an indictment for armed robbery, the defendant could not be convicted of an assault with a deadly weapon committed after the robbery was completed.

Justice HIGGINS, concurring.

In the decision of the Court finding no error in Case No. 2296 in which the defendant was convicted and sentenced for armed robbery; but dissenting in Case No. 2295 in which the defendant was convicted and sentenced for felonious assault.

The cases grew out of an armed robbery of the Bigguns Texaco Station on a public road fourteen miles east of Wadesboro on the morning of July 2, 1970. The evidence of Mr. Smith, who was in charge of the station, is stated in full in the Court's opinion.

The defendant's court-appointed counsel did not object to the consolidation of the two cases for trial and did not challenge the sufficiency of the evidence to go to the jury in either case. However, counsel appointed to prosecute the defendant's appeal challenges the validity of the conviction for felonious assault as charged in Case No. 2295 upon the ground the same was embodied in the charge of armed robbery and that to permit the conviction for the assault to stand would punish the defendant twice for one offense. The motion in arrest, therefore, requires a determination whether the armed robbery charge includes felonious assault. The origin and purpose of a statute furnish essential background for its interpretation.

Prior to the convening of the General Assembly in 1929, an armed robber entered a bank, shot one of the attendants, seriously injuring him, then shot another inflicting a superficial wound. The officers arrived before the robber obtained possession of any property from the bank. The State indicted the robber (1) for attempting to commit robbery (a misdemeanor); (2) for assault with the intent to kill, inflicting serious injury

not resulting in death (a felony); (3) for assault with a deadly weapon; and (4) for carrying a concealed pistol. The jury returned guilty verdicts in all the cases. Maximum sentences were imposed: two years on the road for the unsuccessful attempt to rob; ten years for the felonious assault inflicting serious injury; two years for the assault with the deadly weapon; and six months for carrying a concealed pistol. The trial judge, from the bench, announced that he was sorry the law did not permit the court to inflict sufficient punishment for the offenses committed.

At the subsequent convening of the General Assembly, House Bill No. 549 and Senate Bill No. 1202 were introduced and subsequently passed as Chapter 187, Public Laws of 1929, now codified as G.S. 14-87, and are here quoted in full:

"Section 1. Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than five nor more than thirty years."

The bill of indictment in this case specifically charges that the defendant with the use of a firearm, whereby the life of the attendant was endangered, unlawfully took personal property from the victim. Was the shooting a part of the robbery?

In two robbery cases this Court arrested the judgment in a second indictment which charged assault with intent to kill. The jury convicted of an assault with a deadly weapon. The ground for the decision was based on a duplication of the charges. In State v. Parker, 262 N.C. 679, 138 S.E. 2d 496, and later in State v. Hatcher, 277 N.C. 380, 177 S.E. 2d 892, this Court allowed motions in arrest of judgment for the lesser included offenses of assault with a deadly weapon. In the Parker case, this Court said:

"In this case, all the evidence shows the assaults on Erskine Hill with the pistol and axe handle were committed in connection with, as a part of, and included in the robbery. A conviction of that charge includes all elements of assault with a deadly weapon. This Court, *ex mero motu*, takes notice of the duplication, quashes the indictment charging the assault, sets aside the verdict, and arrests the judgment."

In the case of *State v. Hatcher, supra,* the Court arrived at a similar result.

The prosecution seems to admit that a charge of assault with a deadly weapon is embraced within the robbery charge. It contends that the bill does not charge serious injury and, therefore, a felonious assault charge is not included. True, the statute and indictment do not charge serious injury. Neither do they charge assault, but analysis of the statute makes it abundantly plain, it seems to me, that assault with intent to kill and the infliction of serious injury are both well within the statute and the indictment. The statute provides and the indictment charges that the defendant by the use of the pistol endangered and threatened the life of Lester Smith.

The customary use of a pistol is to fire deadly bullets. Of course, a pistol could be used as a paperweight, but such was not the use contemplated by G.S. 14-87. The bill charges the use of a pistol in such manner as endangered life. That means any use that falls short of taking life. The prosecution admits that if the shooting is such as not to inflict serious injury, the charge is included in armed robbery. But if the bullet goes a little deeper and inflicts a little more injury, that is not included in armed robbery. If the shooting in the robbery results in the death of the victim, the robber can be charged with murder in the first degree and the proof that the killing was in the perpetration of the robbery, the charge of murder is established. In that event the capital felony statute applies, but if the injury falls short of death, the armed robbery statute takes over and provides punishment up to thirty years for that offense. That punishment is the same as that provided for the most aggravated crime of murder in the second degree.

By holding, as the Court now does, that felonious assault is not included in armed robbery, the Court puts emphasis on

minute, technical manipulation of legal phraseology, but displays practically no knowledge of the "use of a pistol." The State says the offenses must be kept separately because some officer might appear on the scene and be shot and seriously wounded and the defendant protected from prosecution by reason of the robbery charge. The illustration does not fit. The robbery charge is confined to the robber and the victim. If a stranger comes on the scene, whatever either does to him, the doer is answerable. The use of the firearm must be in the taking, or the attempt to take, personal property from a person, or a person in charge, and the firearm used in such manner as to endanger or threaten life. The use of the firearm involves the result of the use.

Finally, the prosecution contends the robbery was over and the shooting occurred after the defendant had possessed himself of the victim's money and his pistol. The whole transaction in the little one-man filling station was over in seconds and at no time did the robber retreat or even turn backward toward the door until after the property was taken and the shots were fired.

If the State's position is correct, if the shots had been fatal, the robber could not have been convicted of a felony-murder because the robbery was over. Surely the Court does not desire to put in the books a statement which would enable a robber who shoots his victim to come into the court and say, "Oh, no. I got his property before I shot him and, therefore, you cannot convict me of murder in the first degree because of a killing in the perpetration of a robbery."

Intent is a condition of the mind to be inferred from conduct and surroundings. The indictment in plain words charged the defendant with the use of a pistol in such manner as endangered Smith's life. The *use* of the pistol inflicted the wounds. The statute fixes the maximum punishment for armed robbery at three times the maximum for common law robbery, and three times the maximum for the most vicious case of assault with a deadly weapon with intent to kill. In this case the judgment fixed the defendant's maximum punishment at thirty years in the armed robbery case and ten years in the felonious assault case, the sentences to run consecutively. The defendant says he is being punished twice for one offense in violation of his rights under Article I, Section 19, North Carolina Constitution, and Articles V and XIV of the United States Constitution.

In the case of *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838, Justice Moore, for this Court, states the general rule here quoted with respect to double jeopardy:

". . . (W)hen an offense is a necessary element in and constitutes an essential part of another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to a prosecution to the other.

The only exception to this well established rule is the holding in some cases that conviction of a minor offense in an inferior court does not bar a prosecution for a higher crime, embracing the former, where the inferior court did not have jurisdiction of the higher crime."

In *State v. Freeman,* 162 N.C. 594, 77 S.E. 780, this Court said: ". . . (A) test almost universally applied to determine the identity of the offenses is to ascertain the identity in character and effect of the evidence in both cases."

The victim's testimony, recorded in eighteen lines of the record, describes all that took place inside the filling station between the time the robber drew the pistol and the time he closed the door as he left the scene. Two different crimes cannot be established on the basis of differences in time of the successive acts constituting the robbery. The robbery was not over so long as the robber was on the scene trying to dispatch his victim, to facilitate his escape with the loot and to prevent alarm and pursuit.

In *State v. Bell,* 205 N.C. 225, 171 S.E. 50, this Court said:

"The principle to be extracted from well-considered cases is that by the term, 'same offense,' is not only meant the same offense as an entity and designated as such by legal name, but also any integral part of such offense which may subject an offender to indictment and punishment.

When such integral part of the principal offense is not a distinct affair, but grows out of the same transaction, then an acquittal or conviction of an offender for the lesser offense will bar a prosecution for the greater.

To adopt any other view would tend to destroy the efficacy of the doctrine governing second jeopardy which

is embedded in our organic law as a safeguard to the liberties of the citizens."

In determining former jeopardy the well-considered cases place emphasis on the question whether one should be punished twice for the same unlawful conduct. Both the charges in the indictments and the evidence at the trial are properly examined to determine whether two prosecutions are attempted for one overall offense.

> "It is generally agreed that if a person is tried for a greater offense, he cannot be tried thereafter for a lesser offense necessarily involved in, and a part of, the greater, at least when, under the indictment for the greater offense, the defendant could have been convicted of the lesser offense." Wharton's Criminal Law and Procedure, Vol. 1, Sec. 148.

In well-reasoned opinions, appellate courts of other states have passed on essentially the same questions now before us. In *Duckett v. State* (Texas) 454 S.W. 2d 755, the petitioner was indicted, convicted and sentenced on the charge of robbery by the use of a firearm. At the same time he was indicted for assault with intent to murder. Both indictments grew out of the same transaction. The court said:

> "This is one continuous transaction, within the contemplation of the clause of the constitution which inhibits a second trial for the same offense; and, being such, the state cannot be permitted to prosecute again for assault with intent to murder. The State can carve the minor part of the transaction . . . or can carve the major part of the transaction . . . . However, the state can carve only the one time.
>
> \*   \*   \*   \*   \*   \*   \*
>
> The inhibition against double jeopardy is determined by the facts and circumstances and not by the name of the offense."

In *State v. Richardson*, 460 S.W. 2d 537, the Supreme Court of Missouri (en banc) reversed a conviction for assault with intent to maim on the ground Richardson had been convicted of an attempt to commit robbery. The court held: "A person may by one act violate more than one statute or commit more than one

offense, but the state cannot split a single crime and prosecute it in parts without placing the defendant in double jeopardy."

Perhaps the leading case on the question before us is *Wilcox v. State*, 6 Lea (Tenn) 571, 40 Am Rep 53. The accused was convicted of robbery and subsequently convicted at a later term of the court for assault with intent to commit murder growing out of the same transaction. The court said:

> "The prosecutor (victim), upon the trial, testified to a violent and dangerous assault made upon him by the defendants, and he stated also on his cross-examination, that he had testified to the same facts upon his examination in the previous trial of defendants on the charge of robbery. It was for the assault at the time of the robbery that the conviction was had in this case. Force and violence were proved in each case, and were alike essential in both to sustain a conviction. *It was one continuous transaction, in which defendants perpetrated a robbery, by violence, dangerously wounding the prosecutor.* (Emphasis added.) Being one transaction, the prosecutor may carve as large an offense out of it as he can, but it is said 'he must cut only once . . . .'
>
> \*    \*    \*    \*    \*    \*    \*
>
> The assault or violence in the robbery case being an essential element or ingredient of the offense, and constituting an important and material part of that offense, as it does in the offense of assault with intent to commit murder, and having been once punished in the robbery case as a material part thereof, it cannot be again punished, as it would be if the judgment below were allowed to stand."

The two related statutes involved here are G.S. 14-87 and G.S. 14-32. They must be construed together. When they involve a case of armed robbery, the former includes the latter. Criminal statutes must be strictly construed. "The forbidden act must come clearly within the prohibition of the statute, for the scope of a penal statute will not ordinarily be enlarged by construction to take in offenses not clearly described; and any doubt on this point will be resolved in favor of the defendant." *State v. Hill*, 272 N.C. 439, 158 S.E. 2d 329; *State v. Garrett*, 263 N.C. 773, 140 S.E. 2d 315; *State v. Heath*, 199 N.C. 135, 153 S.E. 855.

The evidence discloses the robbery took place during daylight in a one-man filling station in the country. From the vic-

tim's evidence it clearly appears the robbery was over in a very short time, perhaps in seconds. The robber entered, drew his pistol, demanded and received the contents of the cash register, seized a .22 pistol from a cigar box by the cash register, ordered the victim to lie down with his head on his hands, whereupon the robber fired three shots and fled. We may assume neither the victim nor the robber wasted any time in what they were doing. A daylight robbery would not ordinarily be a leisurely conducted affair. Does not this record disclose one overall transaction?

This Court has repeatedly held that a charge of assault with a deadly weapon is a lesser included offense in the charge of assault with a deadly weapon with intent to kill inflicting serious injury not resulting in death. The very fine opinion by Bobbitt, Justice (now Chief Justice), contains the following: "It (assault with a deadly weapon) is an essential element of the felony created and defined by G.S. 14-32, being an included 'less degree of the same crime.' " *State v. Weaver,* 264 N.C. 681, 142 S.E. 2d 633. See also *State v. Jones,* 264 N.C. 134, 141 S.E. 2d 27; *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545.

The Court now says the foregoing is not true in this particular case because the assault with a deadly weapon is included in and a part of the armed robbery, but is not included in this particular felony charge. In my opinion the necessity of making this fine and illogical legal distinction stems from the error which the Court is now committing in upholding the felonious assault charge in this case. If there is one conviction of assault with a deadly weapon, can there be a subsequent conviction of the felony charge of which it is a part? The Bell, Birckhead, and other cases say "No."

If the Court's present decision is correct, may not the State obtain indictments against persons who inflict serious injury by the use of a deadly weapon in robbery cases and require the robber to answer for the separate crime of felonious assault which he committed in connection with and as a part of the robbery? The statute of limitations does not run in felony cases. If the crimes are independent and separate, as the Court now holds, they need not be tried at the same time and as a part of the robbery charge. This further illustrates and underscores the fallacy of the Court's present action in denying the motion in arrest of judgment in Case No. 2295.

In dividing one transaction into two separate felonies the Court is planting a "booby trap."

I concur in the decision finding no error in Case No. 2296.

I vote to arrest the judgment in Case No. 2295.