State v. Hegler

STATE OF NORTH CAROLINA v. HAYWARD HARRY HEGLER, JR.

No. 7222SC433

(Filed 28 June 1972)

1. Criminal Law § 162— necessity for objection to evidence

Defendant cannot complain of the admission of evidence where he made no objection thereto.

2. Criminal Law §§ 23, 84— legality of search — guilty plea

Defendant's properly entered plea of guilty waived all right to question the legality of a search without a warrant.

3. Criminal Law § 138— sentence — evidence of alcoholism

There is no merit in defendant's contention that the trial judge abused his discretion by showing an indisposition to consider defendant's evidence of alcoholism as a mitigating circumstance in this second degree murder case, where the judge heard all evidence defendant wished to offer, and the minimum sentence imposed by the judge was considerably less than it might have been.

4. Criminal Law § 138— sentence — evidence of prior record

The trial court, in hearing evidence after defendant entered a plea of guilty of second degree murder, did not err in the admission of evidence of defendant's prior record.

5. Criminal Law § 138— admission of hearsay — consent at trial

Defendant cannot object on appeal to the admission of hearsay testimony where defendant consented to the admission of such testimony at the trial.

6. Criminal Law § 23— guilty plea — second degree murder

There is no merit in defendant's contention that his plea of guilty of second degree murder was invalid because the indictment under which he entered his plea was based upon a statute involving the death penalty, which constitutes cruel and unusual punishment.

APPEAL by defendant from *Gambill, Judge,* 13 December 1971 Session of Superior Court held in IREDELL County.

Defendant was charged in a bill of indictment, proper in form, with the capital felony of murder of Virginia Drye White. Defendant tendered a plea of guilty to the lesser included felony of murder in the second degree. After full inquiry by the trial judge, the plea was determined to be freely, understandingly and voluntarily tendered, and the trial judge ordered that the said plea be accepted and entered on the record.

The evidence in the case tends to establish the following:

Defendant was separated from his wife and lived alone in Salisbury. Virginia Drye White (Jenny) was separated from her husband and lived in Kannapolis. Defendant and Jenny spent a lot of time together during the eight to ten months preceding the events involved in this case.

Defendant has suffered from alcoholism since prior to 1960; he was first committed to the Veteran's Administration Hospital in Salisbury as an alcoholic addict during that year. He was last admitted to the Veteran's Hospital as an alcoholic addict in 1971. On this last admission he was found to be oriented to time, place, and person, and was cooperative. From certain tests administered by Dr. Leighton E. Harrell, Jr., clinical psychologist at the hospital, defendant was found to have some degree of damage to the brain in the motor area.

On Friday, 2 July 1971, defendant and Jenny went to the beach together for the fourth of July weekend. They registered as man and wife at a beach motel (presumably a beach in the Wilmington area). They returned to defendant's home in Salisbury late Monday night, 5 July 1971, and spent the night together there.

During the July 4th weekend at the beach, defendant and Jenny did not drink any alcoholic beverages. However, on Monday afternoon, 5 July 1971, they stopped in Wilmington while on their way home and purchased a quantity of beer which they placed in the ice chest in the car. They started drinking the beer on the way home and continued to drink beer over the next several days, while increasingly including whiskey as a part of their drinking diet.

The evidence does not disclose what defendant and Jenny did on Tuesday, but on Wednesday, 7 July 1971, defendant worked at his regular job and then drove from Salisbury to Kannapolis where he met with Jenny. They visited the home of Jenny's parents in Kannapolis, where an argument developed, and Jenny's parents asked defendant to leave. Jenny left with defendant and at this time they were traveling in Jenny's 1961 Buick automobile (apparently defendant's automobile was left where he parked upon arriving in Kannapolis—the evidence indicates that Jenny's automobile was used at all times thereafter).

The evidence does not disclose where defendant and Jenny went for the remainder of Wednesday, nor where they spent Wednesday night. At some time on Thursday, 8 July 1971, defendant and Jenny went to Happy's Lake and then back to defendant's house in Salisbury. They then went to the lake cottage of one Charles K. Linker, a friend of Jenny, on Lake Norman.

Defendant and Jenny arrived at the cottage of Charles K. Linker (Linker) on Lake Norman in Jenny's 1961 Buick with a supply of beer and whiskey on Thursday, 8 July 1971, after dark. At that time Jenny's left jaw was swelling but she indicated she did not want to talk about it. With the permission of Linker and Linker's female companion, defendant and Jenny spent the night on Linker's porch. The next day, Friday, 9 July 1971, when Linker and his female companion left to go to work, defendant and Jenny stayed at the cottage to "get some sun." Jenny cooked some sausage for breakfast which she and defendant ate while they drank beer.

About four o'clock in the afternoon on Friday, 9 July 1971, defendant partially carried and partially dragged Jenny out of Linker's cottage and down to the lake. When they got into the water, defendant started pushing Jenny around and holding her head under the water. Each time Jenny would try to get up, defendant pushed her back down. Defendant slapped Jenny several times, picked her up, and threw her headfirst into the water. Defendant then left the lake and returned to Linker's cottage, where he drank some more beer. Jenny staggered from the water to the steps of the cottage and sat down. Defendant grabbed Jenny by the hair, threw her off the steps, and kicked her in the back. Defendant then lifted her head from the ground by her hair, hit her with his fist, and kicked her. He then poured beer on her head and dragged her down the walk towards Linker's pier. Defendant then straddled Jenny's motionless body and began hitting her in the face.

A young man who observed defendant from across a portion of the lake began to shoot firecrackers in order to scare and stop defendant from beating Jenny. Defendant then picked Jenny up under his arm, carried her to Linker's cottage, and dropped her in a corner of the porch.

Defendant continued to drink beer and to walk around inside and outside of Linker's cottage. Finally, defendant picked

Jenny up from the porch, threw her over his shoulder, and carried her to her car. At approximately this time, Linker and his companion returned to his cottage. They saw only the defendant and he told them that he had to run to the store and would be back in a few minutes. Defendant drove away "pretty fast" in Jenny's car. Linker and his companion looked around for Jenny. After not finding her, they became worried and went to the nearby store. They learned that defendant had not stopped there, and they returned to Linker's cottage.

When defendant left Linker's cottage, Jenny was lying either in the back seat or on the back floor of the car. He did not stop at the nearby store but instead went to Charlotte to get some beer. At about 9:30 p.m., Friday, 9 July 1971, defendant registered for two persons at the Sheraton Motel Inn in Florence, South Carolina. He was wearing old clothes and acted as if he had too much to drink. The evidence does not disclose the reason, but apparently defendant did not stop long in Florence, South Carolina, because shortly after midnight (early morning of Saturday, 10 July 1971) defendant registered for two persons at a motel in Manning, South Carolina. Defendant was "drunk or doped up." He stayed about five minutes and left. Later, during the morning of Saturday, 10 July 1971, defendant registered for two persons at the Holiday Inn in Santee, South Carolina. None of the personnel at the Holiday Inn ever saw anyone with defendant and only one of the two beds in his room was disturbed. He checked out on Sunday morning, 11 July 1971, purchased gas with Jenny's Esso credit card, and obtained directions to Charlotte, North Carolina. Defendant arrived in Salisbury on Sunday afternoon, 11 July 1971; when he drove up to his house, the officers drove up behind him.

Defendant and Jenny's car were taken to the Salisbury Police Department. The trunk of Jenny's car was opened by the police and her body was found in the trunk. The body was wrapped in a bedspread and tied with a yellow nylon rope.

An autopsy was performed by Dr. Warga in Salisbury on Sunday, 11 July 1971, and he reported as follows:

"This patient apparently died as a result of a subdural hematoma involving the left cerebral hemisphere. A subdural hematoma almost invariable is due to some form of trauma. This is probably the best explanation for the dis-

ease found in this individual. The gross finding of multiple contusions and abrasions suggests this was due to a beating. The characteristics of the bruises did not suggest that any physical object was used in the beating, more closely resembling bruises seen with fist or kicking types of injuries. Lacerations on the inner surface of the lip as well as absence of two incisor teeth and the upper jaw with a bloody socket strongly suggest that this was a beating with the fist. The body was markedly decomposed, putrefaction of blood, presence of tissue gases, advanced postmortem autolysis. Changes such as these usually do not occur in less than 36-48 hours, although the conditions under which the body was found suggests accelerated decomposition probably took place."

Defendant offered evidence which tended to establish that he was an alcoholic addict. His evidence further tended to show that he suffered periods of amnesia or "black outs" when he was drinking. His evidence tended to show that defendant has a low frustration tolerance which he was able to control when he was sober. However, when he was drinking, he was unable to control his aggressive impulses. He was not psychotic, but personality tests showed mild defensiveness, rebelliousness, and strong anti-social behavior, particularly toward women. There was evidence that defendant had hit Jenny before the occasion here under review.

Defendant was sentenced to a term of not less than twenty nor more than thirty years imprisonment. He has appealed.

*Attorney General Morgan, by Associate Attorney Speas, for the State.*

*Graham M. Carlton for defendant.*

BROCK, Judge.

[1, 2]   Defendant assigns as error that the trial judge admitted evidence of finding the body of Virginia Drye White in the trunk of her car. He argues that this was an illegal search because he told the officers not to open the trunk and because the search was not incident to a lawful arrest. If we assume, arguendo, that the search without a warrant was illegal, nevertheless defendant may not now complain that the evidence was admitted. One reason why defendant may not now complain

is that he made no objection to any of the testimony or to the photograph. Another reason is that his properly entered plea of guilty waived all right to question the legality of the search. *State v. Perry*, 265 N.C. 517, 144 S.E. 2d 591. This assignment of error is without merit and is overruled.

[3] Defendant assigns as error that the trial judge abused his discretion by showing an indisposition to consider defendant's evidence of his alcoholic addiction as a mitigating circumstance. We find no abuse of discretion. The record on appeal contains twenty-eight pages of testimony from witnesses offered by defendant; this is opposed to only seventeen pages of testimony from witnesses offered by the State. Obviously, the trial judge heard all evidence defendant wished to offer. Suffice it to say, the minimum sentence imposed by the trial judge is considerably less than it might have been. This assignment of error is without merit and is overruled.

[4] Defendant assigns as error that the trial judge admitted evidence of defendant's prior record. A trial judge "may inquire into such matters as the age, the character, the education, the environment, the habits, the mentality, the propensities, and the record of the person about to be sentenced." *State v. Stewart*, 4 N.C. App. 249, 166 S.E. 2d 458. This assignment of error is without merit and is overruled.

[5] Defendant assigns as error that the trial judge admitted hearsay evidence. One of the investigating officers gave the testimony of an absent witness for the State. When the officer began to recite the hearsay testimony, the following appears in the record on appeal:

"Mr. Carlton: Excuse me, your Honor. The man he is quoting is not here?

"Mr. Zimmerman: No, he is not here.

"Mr. Carlton: All right."

No objection was made to the testimony. Had defendant objected, the State would have had an opportunity to present the witness in person. It would not be fair to allow the defendant to consent at trial and then object on appeal. This assignment of error is without merit and is overruled.

[6] Defendant assigns as error that the indictment under which he entered his plea of guilty is illegal because it is based

upon a statute involving the death penalty, which constitutes cruel and unusual punishment. This assignment of error is without merit and is overruled. The entire record supports the finding that defendant's plea of guilty was freely, voluntarily and understandingly entered. That defendant would not have pleaded guilty except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice. *North Carolina v. Alford,* 400 U.S. 25, 27 L.E. 2d 162, 91 S.Ct. 160. Obviously, since his plea of guilty to second degree murder was freely, voluntarily, and understandingly entered, it can make no difference whether the imposition of the death penalty for first degree murder constitutes cruel and unusual punishment or not.

No error.

Chief Judge MALLARD and Judge CAMPBELL concur.