STATE OF NORTH CAROLINA v. HOWARD BENTON BYRD

No. 7825SC874

(Filed 6 March 1979)

1. **Criminal Law §§ 66.3, 169— pretrial identification procedure—evidence introduced by defendant—no objection permitted**

    Defendant may not object to the prejudicial effect of a pretrial identification procedure, regardless of whether it may be improper, when he, not the State, has placed that information before the jury.

2. **Criminal Law § 66.18— in-court identification of defendant—when voir dire required**

    Though it is the better practice for the trial judge, even upon a general objection, to conduct a voir dire outside the hearing of the jury, find facts, and determine. the admissibility of the in-court identification testimony, failure to hold a voir dire is harmless error where the evidence is clear and convincing that the in-court identification of defendant originated with the observation of the defendant at the time of the crime.

APPEAL by defendant from *Hasty, Judge.* Judgment entered 18 May 1978 in the Superior Court, CALDWELL County. Heard in the Court of Appeals 15 January 1979.

The evidence as it relates to defendant's assignments of error tends to show the following sequence of events: Officer Grant Howard of the Lenoir Police Department was on duty around 1:00 a.m. on a rainy 5 November 1977, monitoring traffic from the N.C.N.B. parking lot on Morganton Boulevard. Howard observed a

flatbed Ford truck, license number CV-7253, traveling west on the boulevard. The officer began following the truck, which he estimated to be traveling 50 miles per hour in a 45 mile-per-hour zone. Officer Howard noticed the driver was a white person with dark, shoulder length hair. The officer activated his blue light and siren and shined his spotlight into the cab. The truck did not stop but increased its speed to about 55 miles per hour. A chase ensued wherein the truck failed to heed several stop lights, and its speed reached, at times, 100 miles per hour. Another city patrol car joined the chase and was soon followed by a county unmarked patrol unit. The chase eventually proceeded down U.S. 321 where the second city patrol car attempted to get in front of the speeding vehicle to slow it down. The truck driver refused to slow down and, instead, ran into the back of the unit four or five times.

At the intersection of U.S. 321 and Ideal Drive, the truck driver slowed as if he were attempting to stop, and turned onto the cross-over section between the north and southbound lanes. The truck slowed to 10 to 15 miles per hour. A Hudson Police Department Patrol Unit was sitting in the northbound left turn lane at the intersection waiting for the truck. The truck struck the right front fender of the Hudson unit causing $736 damage. The truck "stopped cross-ways in the turn" and Trooper R. R. Corbin, who had joined in pursuit of the truck, jumped out of his car, crossed the median, and approached the truck. The driver was working the gears and fighting the steering wheel. Corbin testified that he got a look at the driver from a 90 degree angle and that the road at that point was well lighted by street lights. Corbin testified that the person he saw in the truck was a person he had seen before and identified him as the defendant. Trooper Corbin described the defendant's dress on the night of the chase as including a T-shirt with a dark blue ring around the neck.

The truck proceeded up Ideal Drive and onto several other rural roads. On Mt. Herman Road the truck missed a turn and went straight into a cow pasture. By the time the officers arrived at the truck, the driver had fled. Officers found two full unopened cans of beer and one empty can in the seat. The truck was registered to Winkler Construction Company.

Trooper R. R. Corbin described the defendant to Officer Grant Howard. Corbin testified that he recognized the person he

observed in the cab of the truck as the defendant, Howard Benton Byrd, whom Corbin had known "between five, maybe six years". The defendant went to the Lenoir Police Station about 2:00 a.m. to report that his truck had been stolen. Officer Grant Howard was called to the stand by the defense and testified that he observed the defendant at the station and "smelled a strong odor of alcohol on his breath". He appeared at that time to be under the influence. He recognized defendant as the suspect described by Trooper Corbin. Officer Howard informed defendant of his rights and "detained him for questioning". Officer Howard then telephoned Trooper Corbin and asked him if he could identify the suspect, to which Corbin replied in the affirmative. Officer Howard drove defendant to Trooper Corbin's house that same morning where Corbin identified him as the driver of the truck.

The defendant produced substantial evidence tending to show that his truck was stolen from the parking lot at John Dula's poolroom while he and some companions were eating at Cotton Smith's Restaurant. Witness Larry Moore testified that in fact he had stolen the truck and had been the driver in the chase.

Defendant was cited for (1) failure to stop at the scene of an accident, (2) running a red light, and (3) reckless driving. Defendant was found guilty in the district court and appealed. Upon trial de novo, a superior court jury found defendant guilty as charged. From entry of judgment on the verdict sentencing defendant to six months in the Caldwell County jail, suspended for two years upon payment of $425 in fines, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Isaac T. Avery III, for the State.*

*Ted S. Douglas, by Linda G. Hebel, for defendant appellant.*

MORRIS, Chief Judge.

The defendant has brought forward six assignments of error, all of which relate to defendant's contention that the testimony identifying the defendant should have been suppressed. Defendant contends that the identification procedure of showing the suspect individually to Trooper Corbin was under the circumstances so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate due process. There-

fore, defendant contends, any testimony concerning the show-up and any in-court identification of the defendant should have been suppressed. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *modified ʾand affirmed*, 428 U.S. 902, 96 S.Ct. 3202, 49 L.Ed. 2d 1205 (1976).

We note from the record that the trial court did not conduct a voir dire on the admissibility of the identification of the defendant. The defendant objected to the State's introducing any testimony through the witness Trooper Corbin which identified the defendant or referred to the show-up of defendant at Trooper Corbin's house. The trial court ruled that defendant had waived any objection to the admissibility of the identification testimony by conducting the following cross-examination of Officer Howard prior to the State's calling Trooper Corbin:

"Q. Mr. Officer, when Mr. Byrd came into the police station on that occasion, you arrested him, is that right?

A. No, sir.

Q. You didn't arrest him?

A. Not at that point; no, sir.

Q. All right, Did you take him into custody?

A. I detained him for questioning.

Q. Did you later convey Mr. Byrd over to Mr. Corbin's house?

A. Yes, sir, I did.

Q. And that was in the same morning?

A. Yes, sir.

Q. And what did you do — did you call Mr. Corbin before you took him over there?

A. Yes, sir.

Q. What did you tell him when you called him?

A. I asked him if he could identify the man, the man who he observed in the truck.

Q. And what did he say?

A. Yes, he could.

Q. And so you took him over there?

A. Yes, sir.

Q. And Mr. Corbin said this is the man?

A. Yes, sir.

Q. You didn't have a lineup?

A. No, sir."

[1] The defendant's own cross-examination of Officer Howard placed before the jury the identification procedure to which defendant now objects. Defendant may not object to the prejudicial effect of a pretrial identification procedure, regardless of whether it may be improper, when he, not the State, has placed that information before the jury. It is a well-established principle of law that an exception to the admission of evidence is generally waived when testimony of the same import is elicited by the objecting party, *see e.g., Elledge v. Welch*, 238 N.C. 61, 76 S.E. 2d 340 (1953) (dead man's statute); *Shelton v. R.R.*, 193 N.C. 670, 139 S.E. 232 (1927) (offer of compromise), or when evidence of the same import is admitted without objection. *See Mills, Inc. v. Terminal, Inc.*, 273 N.C. 519, 160 S.E. 2d 735 (1968); *McNeil v. Williams*, 16 N.C. App. 322, 191 S.E. 2d 916 (1972). Similarly, once defendant has elicited such testimony, there could be no prejudicial effect on the defendant by the State introducing similar testimony. Indeed, the record before us indicates that the State's only questions with respect to the pretrial identification of the defendant occurred during the examination of Trooper Corbin:

"Q. Now, sir, did you later on the 5th day of November, have an occasion to see the defendant?

A. Yes, sir, I saw a subject that was brought to my house.

Q. And state whether or not the person who was brought to your house is the same man you saw in the truck?

MR. DOUGLAS: OBJECTION.

THE COURT: SUSTAINED.

Q. Is the man who was brought to your house in the court-
room today?

A. Yes, sir."

Assuming *arguendo* the testimony was improperly admitted, such
evidence is not prejudicial when it is merely cumulative. *See
Board of Education v. Lamm*, 276 N.C. 487, 173 S.E. 2d 281 (1970).

[2]  Our Supreme Court has suggested that the better practice is
for the trial judge, even upon a general objection, to conduct a
voir dire outside the hearing of the jury, find facts, and determine
the admissibility of the in-court identification testimony. *State v.
Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972); *State v. Blackwell*,
276 N.C. 714, 174 S.E. 2d 534 (1970), *cert. denied*, 400 U.S. 946, 91
S.Ct. 253, 27 L.Ed. 2d 252 (1970). Nevertheless, where the
evidence is clear and convincing that the in-court identification of
defendant originated with the observation of the defendant at the
time of the crime, failure to hold the voir dire is harmless error.
The evidence in this case tends to indicate that Trooper Corbin
had known defendant for five or six years, recognized him in the
truck, and gave his description to Officer Howard. These facts
along with the opportunity to see defendant from within six to
eight feet on a well-lighted street present clear and convincing
evidence that Trooper Corbin's out-of-court identification of the
defendant originated with the observation of defendant at the
scene of the crime and not with the pretrial show-up.

Because we find no prejudicial error in permitting testimony
concerning the pretrial identification, it follows that any in-court
identification of the defendant was properly admitted. *State v.
Williams*, 38 N.C. App. 183, 247 S.E. 2d 620 (1978). Similarly,
defendant's remaining assignments of error relating to the court's
failure to strike testimony and to direct a verdict for defendant,
which motions were made on the grounds that the evidence iden-
tifying the defendant was incompetent, are overruled.

No error.

Judges MARTIN (Harry C.) and CARLTON concur.