STATE OF NORTH CAROLINA v. DENNIS EDWIN EDWARDS AND STATE
OF NORTH CAROLINA v. RICHARD KEITH NANCE

No. 8013SC595

(Filed 2 December 1980)

1. Criminal Law § 66.18— limp in assailant's walk — no identification — voir
dire not necessary

The trial court did not err in failing to conduct a *voir dire* hearing before
permitting a robbery and assault victim to testify over defendant's objection that
she noticed that there was a limp in her assailant's walk since the witness was not
identifying defendant but was merely describing in general the man who robbed
and assaulted her; moreover, any error in failing to hold a *voir dire* hearing at
that time was rendered harmless when such a hearing was later conducted and
defendant had a full opportunity to challenge and discredit the victim's identifi-
cation of him.

2. Criminal Law §§ 66.11, 66.17— pretrial confrontation at victim's home —
in-court identification — independent origin — no unnecessary suggestive-
ness

A robbery and assault victim's in-court identification was of independent
origin and not tainted by a pretrial identification, and the pretrial identification
procedure was not impermissibly suggestive, where the victim had a sufficient
opportunity to view her assailant in her house while he walked toward her,
attempted to shoot her at close range, and then beat her about the head; when the
victim returned home from the hospital a few hours after the crime, her yard was
full of many people and the police; officers brought defendant into the victim's
yard; the victim identified defendant as her assailant after observing him in the
yard for ten minutes while he stood in a group of officers, neighbors and friends;
and the victim's identification of defendant as he stood in her yard was based on
the fact that defendant had similar physical characteristics, including the dis-
tinguishing feature of a limp, as her assailant.

3. Constitutional Law § 43; Criminal Law § 66.5— pretrial confrontation —
defendant not under arrest — no right to counsel

Defendant did not have a right to counsel when a robbery and assault victim
identified him while he was standing in her yard a few hours after the crimes
since defendant had not been arrested at the time of the confrontation and
adversary judicial proceedings thus had not been instituted against him.

4. Criminal Law § 86.3— cross-examination of defendant — details about prior
convictions

In a prosecution in which defendant testified on direct examination that he
had been convicted of breaking and entering, larceny and two simple assaults,
the trial court did not abuse its discretion in permitting the prosecutor to ask
defendant questions on cross-examination attempting to elicit further details
about defendant's prior convictions where the record fails to show that the
questions were not asked in good faith, and defendant testified about an addi-

State v. Edwards and State v. Nance

tional conviction for assault with a firearm which he had failed to mention on direct examination.

**5. Criminal Law § 138.7— sentencing hearing — Department of Justice criminal record**

The trial court did not err in the admission of a copy of defendant's U.S. Department of Justice criminal record during the sentencing hearing.

**6. Criminal Law § 51— qualifications to give expert testimony — effect of general objection**

Defendant waived objection to the qualifications of a deputy sheriff to testify that he checked the brakes on defendant's car and they worked properly and had sufficient brake fluid where defendant interposed only a general objection and did not object on the ground that the witness had not been qualified as an expert.

**7. Criminal Law § 26.5— convictions of armed robbery and felonious assault — no double jeopardy**

Defendant was not placed in double jeopardy by his convictions of armed robbery and assault with a deadly weapon inflicting serious injury not resulting in death arising out of the same conduct since a conviction of armed robbery does not establish defendant's guilt of the felonious assault.

**8. Robbery § 4.3— property taken from victim's presence by use of firearm —sufficiency of evidence**

The State's evidence in an armed robbery case was sufficient to show that property was taken by force from the victim's presence with the use of a firearm where it tended to show that the victim entered her house at 11:30 a.m. and immediately noticed that cabinet drawers and doors were open; as she was talking on the telephone, a masked man carrying a pistol came out of a bedroom down the hall toward her and said he was going to kill her; the victim knocked the gun up as it fired, and the man began to beat her with it; she managed to escape from the house; and when she returned home from the hospital a few hours later, she went into the bedroom with police officers and discovered that a window had been broken and several items of personal property were missing, since it can be inferred from the evidence that the assailant had attempted to frighten the victim and that as soon as she left the house, he went back into the bedroom and took property which did not belong to him.

**9. Criminal Law § 9.3; Robbery § 4.5— guilt as aider and abettor — sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of felonious breaking or entering, armed robbery and felonious assault as an aider and abettor where it tended to show that defendant was parked on a road near woods leading to the victim's house at the time of the crimes; defendant admitted to an officer that he knew about the "hit" at the victim's house and that he had lied when he told the officer he was parked on the road because he was having brake trouble; and a hatchet found in a bedroom of the victim's house, a ladder found outside the bedroom window and a hatchet holster and belt belonged to defendant, since the evidence supports the conclusion that defendant communicated to

State v. Edwards and State v. Nance

the actual perpetrator his intent to aid him by driving the car and waiting for his return, by supplying the tools used to gain entry into the house, and by remaining close enough to the scene to render assistance if necessary.

APPEAL by defendants from *McLelland, Judge.* Judgments entered 18 February 1980 in Superior Court, BLADEN County. Heard in the Court of Appeals 5 November 1980.

Defendants were convicted of felonious breaking or entering, robbery with a firearm, and assault with a deadly weapon inflicting serious injury in violation of G.S. 14-54(a), 14-87, and 14-32. Both received active prison sentences.

The State's evidence tended to show the following. Jessie Singletary was a widow who lived alone on Highway 211 in Bladenboro, North Carolina. Her son, Bob, lived approximately 300 yards away through some woods. On Sunday, 21 October 1979, she left her house, with all the windows and doors closed and locked, at 9:55 a.m. to go to church. She was driving back home on a rural road, when she noticed a car parked across from her son's house near the woods. A power line right-of-way leads through the woods to her house. She recognized the man sitting in the car, on the driver's side, as Richard Keith Nance. She drove into her son's driveway, but as he was not home from church yet, she left and headed back to her own home. As she passed the parked car a second time, Nance turned his head away to keep her from identifying him. She met her son on the way and stopped to tell him that "[t]here is something peculiar about that car sitting up there."

She subsequently arrived home at 11:30 a.m. and entered the house by unlocking the side door by the carport. Upon her entry, she immediately noticed that the cabinet doors and drawers were open in the kitchen. She went to the phone to call her son, and as she was talking to her grandson, she heard a noise in the bedroom. The bedroom is located in the back of the house. A man then came out of the bedroom and walked down the hall toward her. The man limped as he walked and wore a striped mask covering his entire face from above his upper lip. The man pointed a pistol straight at her and when he was only one foot away from her, said "I'm going to kill you." She knocked his gun up with her pocketbook as it fired, and the bullet hit a window frame. The man then beat her on the head with the gun. Mrs. Singletary, however, fought off the attacker with her pocketbook and was able to escape from the house.

She caught a ride to the hospital where her head wounds were treated, one of which required nine stitches. She received some medication for pain. She returned home within two hours, but she was still dizzy, nervous and had a headache.

Mrs. Singletary went with the police into her bedroom to reenact the crime. During the actual incident, she had not gone any further in the house than the den. She noticed that the outside screen to one of the bedroom windows had been torn off, the storm window was broken, and the inside window was raised. She also discovered that several items of personal property were missing. The items were estimated to be worth approximately $1,000.00.

Her yard was full of police, friends and neighbors after the crime. Defendants Nance and Edwards were also present. On *voir dire* examination at trial, Mrs. Singletary testified that she identified defendant Nance as the man in the parked car but told officers that he was not the man that had been in the house. Sheriff Storms asked her if she could identify another man. Defendant Edwards was standing in a group of officers and neighbors. After observing him for ten minutes, she identified Edwards as the man that had attacked her in the house. She testified that he was the same height as her attacker, the lower part of his face was similar, and he also limped as he walked. She admitted that she probably knew everyone in the yard where defendant was standing but stated that she had seen him before in the house. She also admitted that she was sitting down under her carport at the time of the identification, felt dizzy and had taken some pain pills. She was unable to identify what clothes he had on and could not remember whether she had her glasses on at the time. The judge found that the pretrial identification procedures were not impermissibly suggestive and admitted the identification.

Deputy Garland Prevatte responded to the armed robbery call on 21 October 1979. As he drove to the Singletary residence, he passed a parked car on the rural road. He arrived at the house within four minutes of the call at approximately 11:50 a.m. Some people at the scene advised him that the parked car "had been there." Prevatte drove back to the parked car and requested identification of the occupant. Defendant Nance was alone in the car in the driver's seat. He told Prevatte that he had borrowed Edwards' car and was having brake trouble. Prevatte told him he might want to talk to him again later. Prevatte went back to the house, and when

he learned what had happened, he called an officer on the radio to go and restrain Nance for questioning. Prevatte later tested the brakes on the car by getting in it and mashing on the brakes. He said they worked properly.

Deputy Hester had seen a similar car parked on the same rural road two weeks before Mrs. Singletary was robbed. No one was in the car at the time, but Hester called Raleigh for identification of the vehicle. The car was registered in name of Dennis Edwin Edwards.

Deputy Little also arrived on the scene on 21 October 1979. He observed a broken storm window and raised window in the bedroom and tools lying on a chair. One of the tools was a hatchet. He also found a ladder propped up against the wall next to the open bedroom window. He testified that he saw Nance in the yard at that time and that he had a conversation with him. During a conversation six hours later at the jail, Nance made a statement. After a *voir dire* examination, the court allowed admission of the statement. Nance told Little that the hatchet found in the bedroom belonged to him and gave him permission to search the car. A belt and hatchet holster were found in the car, and Nance identified them as his own. Since Nance had told him earlier that he was stopped because of car trouble, Little tested the brakes and found them to be working properly. He also checked the brake fluid under the hood and found that the car had a sufficient amount. Later at the jail, Nance told him that he had lied about the brake problem and that he knew something was about to be "hit" and broken into. Nance said he was parked there waiting on another individual and that he had been at the same location a few weeks earlier. He said he drove by the Singletary residence on Highway 211 for some distance. The individual with him then said, "I have seen enough." They then went back to the intersection of the highway and the rural road and parked on the shoulder. Nance remained in the car, but the individual with him got out and walked toward the highway in the general direction of Mrs. Singletary's house. After this statement was given, Deputy Little went to Nance's home and looked in his bedroom. He observed bunk beds there which were made of the same type of wood as that in the ladder found outside Mrs. Singletary's bedroom window.

Defendant Edwards testified that he had lent his car to Ricky Nance, his father and a fellow named Joe on the morning of 21

October 1979 around 9:00 or 9:30 a.m. He said he had also lent the car to them two weeks earlier. When his car was not returned as expected, he went looking for it and eventually went back to the Nance home around 4:30 p.m. Officers were at the house and asked him to accompany them to Mrs. Singletary's residence. He denied any knowledge or participation in any of the charged offenses. On cross-examination, he stated that he had polio and had limped most of his life. He could not explain how or why the witness identified him as the perpetrator.

Defendant Nance's evidence was that he drove Edwards' car, for the first time, on 21 October 1979 with a friend of his father's named Joe. He was driving to visit his mother. The brakes failed so he pulled over and parked. He gave Joe $20.00 to purchase brake fluid, and Joe left. Joe did not return, and his whereabouts were unknown at the time of the trial. Nance saw Mrs. Singletary ride by on her way back home from church. He permitted officers to question him and search his car, but he denied that he ever made any incriminating statements to Deputy Little. He admitted that the hatchet holster was his, but denied that the hatchet and ladder found at Mrs. Singletary's were his or that his bedroom at home had bunk beds in it.

Defendants appeal from their convictions for felonious breaking or entering, armed robbery and assault with a deadly weapon inflicting serious bodily injury.

*Attorney General Edmisten, by Assistant Attorney General Charles M. Hensey, for the State.*

*Hester, Johnson and Johnson, by W. Leslie Johnson, Jr., and Moore and Melvin, by David Garrett Wall, for defendant appellants.*

VAUGHN, Judge.

Defendant Edwards raises many questions for review, but his basic contentions concern the admission of Jessie Singletary's identification testimony, the District Attorney's questioning about his prior criminal record and the admission of a copy of that record during sentencing. Defendant Nance questions the admissibility of lay testimony about the working condition of brakes in a car, the court's failure to summarize his evidence and contentions adequately and its denial of his motion to arrest judgment in the conviction for assault with a deadly weapon inflicting serious bod-

ily injury. Both defendants argue that their motions to dismiss should have been allowed and that the many alleged errors require reversal or a new trial. We disagree.

[1]  Defendant Edwards contends that the court improperly over-ruled his objection to the following question of Jessie Singletary on direct examination.

Q. Did you see him [the man in her house] walk at this time?

A. Yes.

Q. What did you observe about the way he walked?

MR. JOHNSON: OBJECTION.

COURT: OVERRULED.

MR. JOHNSON: I would like to be heard.

COURT: You would like to be heard on the way he walked?

MR. JOHNSON: Yes, sir.

COURT: DENIED. Proceed.

Q. What did you notice about the way he walked?

A. There was a limp in his walk.

MR. JOHNSON: OBJECTION AND MOTION TO STRIKE.

COURT: OVERRULED AND DENIED.

Defendant argues that the court should have conducted a *voir dire* hearing before this testimony was admitted. The trial court ordinarily should conduct a *voir dire* examination, even upon a general objection, to determine the admissibility of identification testimony. *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972); *State v. Byrd*, 40 N.C. App. 172, 252 S.E. 2d 279, *cert. denied*, 298 N.C. 301, 259 S.E. 2d 915 (1979). Nevertheless, we fail to see how defendant was prejudiced by the court's initial failure to conduct a *voir dire*. The witness was not identifying defendant Edwards in particular but was merely describing in general the man who assaulted her in the house. Moreover, a *voir dire* hearing was later conducted in

which defendant had a full opportunity to challenge and discredit the witness's identification. In these circumstances, any error concerning the timing of the *voir dire* must be deemed harmless. *State v. Boykin*, 298 N.C. 687, 259 S.E. 2d 883 (1979); *State v. Martin*, 29 N.C. App. 17, 222 S.E. 2d 718, *review denied*, 290 N.C. 96, 225 S.E. 2d 325 (1976).

**[2]**   Defendant Edwards next contends that Mrs. Singletary's identification should have been suppressed because it was tainted by an illegal and impermissibly suggestive pretrial identification procedure. The court, however, held to the contrary and found from the evidence

> that the witness, Mrs. Singletary, observed at close range and in adequate light in her home a man wearing a mask who limped, not noting his clothing but noting his size and the build. That she observed the man for some minutes, was assaulted by him. That the defendant Dennis Edwin Edwards was brought by officers before the witness in her back yard and among a crowd of people some three to four hours later. That she observed the defendant walk, observed his size and build, and responding to an officer's inquiry identified defendant as the man seen earlier in her house. The confrontation was not impermissibly suggestive. The witness' identification was based on her observation.

It is axiomatic that the findings entered on *voir dire* are conclusive and binding on appeal if they are supported by competent evidence in the record. *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1 (1966); *State v. Baker*, 34 N.C. App. 434, 238 S.E. 2d 648 (1977). In addition, there is a presumption that the judge disregards incompetent evidence in making such findings. 1 Stansbury's N.C. Evidence § 4a (Brandis rev. 1973).

We believe that the witness had a sufficient opportunity to view her attacker in the house while he walked toward her, attempted to shoot her at a very close range, and then beat her about the head. She returned home from the hospital a few hours after the crime. Her yard was full of many people and police. She recognized defendant Nance as the man in the parked car. She later identified defendant Edwards as the man that had attacked her in the house after observing him in the yard for ten minutes, while he stood in a

group of "law officers, neighbors and friends." She testified that Edwards had similar physical characteristics, including the distinguishing feature of a limp, as her attacker. In short, the witness made a positive pretrial and in-court identification of defendant Edwards based on her personal observations during the assault. On cross-examination of Mrs. Singletary, defendant tended to impeach the reliability of her identification. The jury could properly weigh this evidence in its deliberations, but the evidence did not require the judge to exclude Mrs. Singletary's identification testimony as a matter of law. The court's conclusion that the pretrial procedures were not impermissibly suggestive is supported by ample competent evidence; therefore, it is binding on appeal. *State v. Patton*, 45 N.C. App. 676, 263 S.E. 2d 796 (1980).

[3] Counsel seems to assert an additional error with regard to the pretrial identification procedure: "the defendant had a right to counsel at the time he was paraded before the prosecuting witness, alone and in custody. . . ." Any question about a violation of defendant's right to counsel should have been raised during trial, and we cannot find any mention of it in the record. It suffices to say, however, that a defendant has a constitutional right to presence of counsel during a pretrial identification only when adversary judicial criminal proceedings have been instituted against him prior to the confrontation. *Kirby v. Illinois*, 406 U.S. 682, 92 S. Ct. 1877 (1972); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *death penalty vacated*, 428 U.S. 902, 96 S. Ct. 3202 (1976); *State v. Puckett*, 46 N.C. App. 719, 266 S.E. 2d 48, *appeal dismissed*, 300 N.C. 561 (1980). Edwards had not been arrested at the time of the confrontation. His right to counsel was not, therefore, violated when the prosecuting witness identified him in the yard because he had not yet been accused in a judicial sense.

[4] Defendant Edwards also claims that the District Attorney asked prejudicial and inflammatory questions in cross-examining him about his criminal record. On direct examination, defendant testified about his convictions for breaking and entering, larceny and two simple assaults. Defendant was then cross-examined as follows:

> Q. Let me ask you this: Now, you told Mr. Johnson you have only been convicted of breaking and entering, is that right?

A. and simple assault.

Q. All right, was that in the house of a lady "that you had earlier cased out"?

A. No, sir.

MR. JOHNSON: OBJECTION.

COURT: OVERRULED.

A. In 1977 I was convicted of assault with a firearm. In 1976 they locked me up but they broke it down because it was not true.

Q. Tell me whether or not you were convicted of using a firearm, trying to kill someone?

A. No, sir.

MR. JOHNSON: OBJECTION.

COURT: OVERRULED.

There is nothing in the record to show that these questions were not asked in good faith, and we must defer to the judge's discretion in permitting the questions since there is no clear showing of abuse. *State v. McLean*, 294 N.C. 623, 242 S.E. 2d 814 (1978). Moreover, it is noteworthy that defendant testified about an additional conviction for assault with a firearm in 1977 which he had failed to mention during his direct examination. Certainly, this was relevant impeachment evidence. Thus, it was not only proper, it was also prudent for the prosecutor to attempt to elicit further details about defendant's prior convictions. *See* 1 Stansbury, N.C. Evidence § 112 (Brandis rev. 1973.)

**[5]** Defendant Edwards has also failed to show prejudicial error in the admission of a copy of his U.S. Department of Justice criminal record during the sentencing hearing. Clearly, it was within the judge's discretion to permit the introduction of actual evidence of defendant's prior criminal record. *State v. Hester*, 37 N.C. App. 448, 246 S.E. 2d 83 (1978); *State v. Hegler*, 15 N.C. App. 51, 189 S.E. 2d 596, *cert. denied*, 281 N.C. 761, 191 S.E. 2d 358 (1972). Defendant will not now be permitted to complain on appeal, on the basis of a general objection, when he did not specifically challenge the authenticity or accuracy of the record during the sentencing hear-

State v. Edwards and State v. Nance

ing and failed to present any evidence whatsoever that the copy was false or irregular.

We now turn our attention to the alleged errors asserted by defendant Nance. Nance told officers shortly after the perpetration of the crime that he was parked near the Singletary residence because of brake trouble and that he had sent Joe, a fellow riding with him, to get some brake fluid. Deputy Prevatte testified that he checked the brakes on the car later, and they worked properly. Though defendant objected to this testimony, he has not made any argument or cited any authorities in his brief pertaining to these objections. The exceptions are, therefore, deemed abandoned on appeal. App. R. 28(b) (3). Defendant does, however, present argument in his brief concerning objections to similar testimony by another deputy which he contends should have been sustained.

[6] Deputy Little testified that he checked the brakes after Nance was in custody. He stated that the brakes worked properly and that there was sufficient brake fluid in the car. Nance contends that this testimony should not have been admitted because Little was not an expert in automobile mechanics. Defendant only interposed a general objection and did not make a special request to have the deputy qualified as an expert. This was insufficient to preserve an exception for our review. "Objection to a witness' qualifications as an expert is waived if not made in apt time on this special ground, even though general objection is taken." *Paris v. Aggregates, Inc.*, 271 N.C. 471, 481, 157 S.E. 2d 131, 138 (1967); 1 Stansbury, N.C. Evidence § 133, at 431 (Brandis rev. 1973). The deputy was also permitted to testify on this same subject on redirect examination without objection. Thus, even if a general objection had been sufficient, its benefit was lost when substantially the same evidence was thereafter admitted without renewed objection. *Power Co. v. Winebarger*, 300 N.C. 57, 265 S.E. 2d 227 (1980); 1 Stansbury, N.C. Evidence § 30 (Brandis rev. 1973).

Defendant Nance also claims that the judge failed to summarize his evidence and contentions adequately in the charge to the jury. The trial judge is only required to summarize the evidence in a manner sufficient to explain the law arising therefrom. G.S. 15A-1232. We hold that the summary is fair and adequate. In addition, the judge is not required to state the contentions of the parties even when requested. Here, neither side's contentions were given in the instructions, and there is simply nothing to complain about.

Moreover, no exceptions were preserved for review by timely objections at trial affording the judge an opportunity to correct any possible errors. *State v. Virgil*, 276 N.C. 217, 172 S.E. 2d 28 (1970); *State v. Robinson*, 40 N.C. App. 514, 253 S.E. 2d 311 (1979).

**[7]** Defendant Nance questions the propriety of his convictions for armed robbery in violation of G.S. 14-87 and assault with a deadly weapon inflicting serious injury not resulting in death in violation of G.S. 14-32. He contends that simultaneous convictions on these charges violate the constitutional prohibition against double jeopardy for the same offense because a violation of G.S. 14-32 is a lesser included offense of G.S. 14-87. We must disagree. An assault with a deadly weapon is a lesser included offense of armed robbery. This is obviously true because it would be impossible to commit a robbery with a firearm without assaulting someone with a deadly weapon. Nevertheless, it does not follow that felonious assault with a deadly weapon inflicting serious injury is also a lesser included offense of armed robbery. Certainly, it is possible to perpetrate a robbery with a firearm without ever actually shooting someone or, as in this case, using the gun to beat someone about the head. The protection against double jeopardy does not attach unless all of the essential elements of one of the offenses are also included in the elements of another offense for which the defendant has been convicted. The issue raised by defendant Nance was specifically addressed and decided in *State v. Richardson*, 279 N.C. 621, 628, 185 S.E. 2d 102, 107-08 (1971), where the Court stated:

> If a person is convicted simultaneously of armed robbery and of the lesser included offense of assault with a deadly weapon, and both offenses arise out of the same conduct, as in *State v. Parker*, 262 N.C. 679, 138 S.E. 2d 496 (1964), and *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892 (1970), and separate judgments are pronounced, the judgment on the separate verdict of guilty of assault with a deadly weapon must be arrested. In such case, the armed robbery is accomplished by the assault with a deadly weapon and *all* essentials of this assault charge are essentials of the armed robbery charge. However, if a defendant is convicted simultaneously of armed robbery and of *felonious* assault under G.S. 14-32(a), neither the infliction of serious injury nor an intent to kill is an essential of the armed robbery charge. A conviction of

armed robbery does not establish a defendant's guilt of felonious assault.

*See also State v. Dammons*, 293 N.C. 263, 237 S.E. 2d 834 (1977). Defendant Nance could be convicted of both charges without offending the notion of double jeopardy, and it was not error for the judge to deny his motion to arrest judgment on this ground.

[8] Both defendants contend that their motions to dismiss the armed robbery charge should have been granted. It is elementary that a motion to dismiss should only be granted when the State has failed to present sufficient evidence of the essential elements of the crime charged, considering all the evidence in the light most favorable to the State with the benefit of every reasonable inference of fact arising therefrom. *State v. Easterling*, 300 N.C. App. 594, 268 S.E. 2d 800 (1980); *State v. Smith*, 40 N.C. App. 72, 252 S.E. 2d 535 (1979). Defendants argue that a violation of G.S. 14-87 could not be proven because the State could not show that anything was taken by force from the presence of Mrs. Singletary with the use of a firearm. We disagree.

The State's evidence tended to show that Mrs. Singletary entered her house about 11:30 a.m. through a side door and immediatly noticed that cabinet drawers and doors were open. She did not hear anything, but she went to the phone to call her son. As she was talking on the phone, a masked man carrying a pistol came out of the bedroom down the hall toward her. The man said he was going to kill her. She knocked the gun up as it fired, and he began to beat her with it. She managed to escape out of the house. When she returned from the hospital, she went into the bedroom with police. She discovered that a window had been broken and that several items of personal property were missing. Upon this evidence, it was reasonable to infer that Edwards had attempted to frighten Mrs. Singletary and that, as soon as she left the house, he went back into the bedroom and took property which did not belong to him.

In urging dismissal, defendant Nance relies on and cites the case of *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). *Powell* is inapposite here. In *Powell*, the Court upheld the defendant's convictions for first degree murder and rape, but reversed the denial of a motion to dismiss the armed robbery charge because there was no evidence, and no reasonable inference to be adduced therefrom, that the defendant took objects from the victim by force while she

was alive. The evidence merely indicated "that defendant took the objects as an afterthought once the victim had died." 299 N.C. at 102, 261 S.E. 2d at 119. The instructive case is *State v. Clemmons*, 35 N.C. App. 192, 241 S.E. 2d 116, *review denied*, 294 N.C. 737, 244 S.E. 2d 155 (1978). In *Clemmons*, the co-owner of a store went into an adjoining room after being threatened with force and was shot by the unidentified robber. The other co-owner then gave the money to the defendant. This Court held that the evidence supported a conviction for robbery with a firearm.

> The word "presence" must be interpreted broadly and with due consideration to the main element of the crime-intimidation or force by the use or threatened use of firearms. "Presence" here means a possession or control by a person so immediate that force or intimidation is essential to the taking of the property. And if the force or intimidation by the use of firearms for the purpose of taking personal property has been used and caused the victim in possession or control to flee the premises and this is followed by the taking of the property in a continuous course of conduct, the taking is from the "presence" of the victim.

We construe the term "presence" broadly and hold that the evidence against defendants was sufficient to support convictions for armed robbery. *See State v. Brown*, 300 N.C. 41, 265 S.E.2d 191 (1980); *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980).

**[9]** Defendant Nance additionally contends that the court should have dismissed the charge against him as an aider and abettor. To support such a conviction, the State's evidence must show the existence of the following three elements: (1) defendant's actual or constructive presence during the crime; (2) defendant's intent to aid in the commission of the offense if necessary; and (3) the communication of defendant's intent to assist to the actual perpetrator. *State v. Sanders*, 288 N.C. 285, 218 S.E. 2d 352 (1975); *see, e.g., State v. Corbin*, 48 N.C. App. 194, 268 S.E. 2d 260 (1980).

The State's evidence showed that defendant Nance was parked on the road near the woods leading to Mrs. Singletary's house at the time of the crime. The car belonged to defendant Edwards. An officer had seen the car parked at the same location two weeks earlier. In his statement to Deputy Little, Nance admitted that he had lied

about the brake problem and knew about the "hit" at Mrs. Single-tary's. The hatchet found in the bedroom, the ladder outside the window, and the hatchet holster and belt belonged to Nance. Viewed in the light most favorable to the State, this evidence sup-ports the conclusion that Nance communicated to Edwards his intent to aid him by driving the car and waiting for his return, by supplying the tools used to gain entry into the building and by remaining close enough to the scene to render assistance if it became necessary. *See State v. Sanders, supra; State v. Gregory*, 37 N.C. App. 693, 247 S.E. 2d 19 (1978). We affirm the denial of defendant Nance's motion to dismiss the charge for aiding and abetting.

We have carefully reviewed defendants' remaining assign-ments of error concerning the manner in which the verdicts were taken and recorded and the denial of various post-verdict motions. These assignments lack merit, fail to disclose any prejudicial error and are overruled.

No error.

Judges MARTIN (Robert M.) and WELLS concur.